## In re TENNOL ENERGY COMPANY, Debtor.

### Bankruptcy No. 88–02650.

United States Bankruptcy Court, E.D. Tennessee.

April 19, 1991.

Patrick, Beard, Richardson & Ray, Chattanooga, Tenn., for Thomas E. Ray, trustee.

---

Richard P. Jahn Sr., Chattanooga, Tenn., for Hicks Enterprises, Inc.

Stan Jutkowitz, Washington, D.C., for debtor.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This case came to be heard upon the chapter 7 trustee's motion to compromise an adversary proceeding that is currently pending in the United States District Court for the Eastern District of Tennessee. An objection to the motion was filed by Hicks Enterprises, Inc., an unsecured creditor of the debtor. Having considered the evidence presented at the hearing, and having reviewed substantial portions of the adversary proceeding file,[1] the court now makes its findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052.

### A. General

1. This bankruptcy case was instituted as an involuntary proceeding against the debtor, Tennol Energy Company, a partnership, on October 3, 1988. An order for relief under chapter 7 was entered on November 9, 1988.

2. Thomas E. Ray was appointed interim trustee of the debtor on October 7, 1988, and was later appointed to serve as trustee pursuant to 11 U.S.C.A. § 702 (West 1979 & Supp.1991).

3. On November 21, 1989, the trustee filed an adversary proceeding in this court styled Thomas E. Ray, Trustee v. Combustion Engineering, Inc., Lummus Crest, Inc., Harbert International, Inc., and Southland Power Constructors, Inc., adversary number 1–89–0432. After the defendants filed motions in the district court to withdraw the reference, and following the consent of the trustee, the adversary proceeding was removed to the United States District Court for the Eastern District of Tennessee on July 30, 1990.

4. The debtor was formed to design, finance, and construct an ethanol plant in Marion County, Tennessee, with the use of government-guaranteed financing available pursuant to the Federal Biomass Energy and Alcohol Fuels Act of 1980, 42 U.S.C. § 8801, et seq. (1983). The Biomass Act was administered by the U.S. Department of Energy ("DOE"). Government-guaranteed financing was obtained by the Bankers Trust Company ("Bankers Trust").

5. The defendants in the adversary proceeding are: Combustion Engineering, Inc. ("CE"), purportedly a limited partner of the debtor; Harbert International, Inc. ("Harbert"), purportedly a limited partner of the debtor; Lummus Crest, Inc. ("Lummus"), a wholly-owned subsidiary of CE which entered into an Engineering, Procurement, and Construction Contract with the debtor for the design and construction of the debtor's ethanol plant ("EPC Contract"); and Southland Power Constructors, Inc. ("Southland"), a wholly-owned subsidiary of the Harbert Corporation (of which Harbert International, Inc. is also a wholly-owned subsidiary), which entered into a contract with Lummus for the construction of the debtor's plant pursuant to the EPC Contract.

6. The trustee's adversary proceeding asserts seven counts. These counts are summarized as follows:

a. Count I alleges that the defendants failed to substantially comply in good faith with the requirements of Tennessee Code Annotated § 61–2–102 because the debtor's certificate of limited partnership did not accurately reflect the actual capital investments (or lack thereof) of the partners, and that as a result, the defendants are liable as general partners for the deficiency in the assets in the debtor's estate, pursuant to 11 U.S.C. § 723.

b. Count II alleges that the defendants exercised substantially the same powers as a general partner over the affairs of the debtor and are, therefore, general partners pursuant to Tennessee Code Annotated § 61–2–107, and that the defendants, as general partners, are lia-

---

1. The parties agreed the record in this case should include the adversary proceeding file which is located in the district court clerk's office. It was further agreed that this court could independently obtain access to the file in considering the trustee's motion.

ble for the deficiency and the assets of the debtor's estate, pursuant to 11 U.S.C. § 723.

c. Count III alleges that the defendants failed to amend the debtor's certificate of limited partnership to reflect (a) a return of the defendants' capital investment; (b) the defendants' plans regarding payment of additional interest or compensation to themselves; (c) the identities of all of the partners; and (d) changes in the partnership affairs brought about by specific agreements of December 20, 1985, and March 5, 1987, and that this failure also rendered the defendants liable as general partners for the deficiency in the assets of the debtor's estate, pursuant to 11 U.S.C. § 723.

d. Count IV alleges that the defendants received a wrongful return of their capital investments or received money wrongfully paid on account of those investments in violation of Tennessee Code Annotated § 61–2–117, and seeks recovery of the capital investments wrongfully returned or money wrongfully paid to the defendants on account of those capital investments, pursuant to 11 U.S.C. §§ 541 and 544.

e. Count V alleges that the defendants had a plan which constituted an improper insuring or securing of the defendants' risk capital, and seeks recovery from the defendants of the amount of their capital investments improperly insured or secured, pursuant to 11 U.S.C. §§ 541 and 544.

f. Count VI brought pursuant to 11 U.S.C. §§ 541 and 544 alleges that, if any of the defendants are deemed to be limited partners rather than general partners, then the trustee is entitled to recover from them, pursuant to Tennessee Code Annotated § 61–2–113, payments made to the defendants when the assets of the partnership were not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners.

g. Count VII alleges that the defendants breached the debtor's partnership agreement by charging the debtor under the EPC Contract and its subcontracts more than the debtor would have been charged if these contracts had been negotiated on an arm's length basis. This count, brought pursuant to 11 U.S.C. §§ 541 and 544 seeks damages for this breach.

h. Count VIII, also brought pursuant to 11 U.S.C. §§ 541 and 544, alleges that CE and Lummus made negligent misrepresentations regarding the LBW Ethanol Process which was chosen for use at the debtor's plant.

7. Initially, the debtor's estate lacked the financial resources to undertake major litigation against the defendants. The trustee, however, was able to obtain a court-approved postpetition loan from the DOE to fund the expenses of the litigation. Payback of the loan will come from any proceeds recovered from the lawsuit. To date the trustee has utilized approximately $155,000 of the loan amount, leaving a balance of approximately $95,000 available for future expenses. The trustee does have some concern that the $95,000 may be insufficient to cover all litigation expenses should this case proceed through trial and appeal.

8. The adversary proceeding brought by the trustee against the defendants has been met with a vigorous defense. The defendants deny the key factual allegations of the trustee's complaint and they raise many factual and legal defenses. Also, the defendants have demanded a jury to try the case.

9. Discovery has been extensive. Combustion Engineering and Lummus have produced to the trustee more than 750 banker's boxes of documents. Harbert and Southland have produced more than 200 banker's boxes of documents. Many other documents have also been produced by individuals and companies not parties to the litigation. Twenty nine depositions have been taken requiring more than 50 days exclusive of the time spent preparing for and studying the results after the deposition was concluded. In addition, there have been many interviews with persons whose depositions were noticed.

10. Motions for partial summary judgment have been filed by the parties. The trustee has moved for a summary judgment on counts I, IV, V, and VII of the complaint. The defendants have moved for summary judgment on counts I, II, III, V, VI, and VII. Voluminous briefs and exhibits have been filed by the parties in support of their respective positions.

### B. *Claims and Defenses*

11. The trustee's claims can be grouped in four categories: (1) improper return of partners' capital; (2) general partner claims; (3) payments to limited partners when the partnership was insolvent for purposes of Tennessee Code Annotated § 61–2–113; and (4) negligent misrepresentation. Each of these is discussed below.

### Improper Return of Partners' Capital

12. The thrust of the claim of improper return of partners' capital is found in count IV of the complaint. The trustee alleges the defendants worked together to accomplish a goal of not having any equity at risk in the debtor partnership, even though two of the defendants purported to be limited partners making equity investments. The trustee alleges the defendants added the proposed equity investments to the contract prices of the defendants who were to do design and construction work for the plant, and that the contract pricing for the plant, as a result, included not only direct costs, profit, and overhead, but also included partners' equity. Thus, the trustee alleges the equity investments were returned to the defendants during construction through the mechanism of contract payments, and did not remain at risk in the debtor, to be recovered only through the success of the debtor's business. Counts V and VII are related counts.

13. The defendants vigorously deny the trustee's allegations that equity investments were returned. The defenses include:

a. The contract prices for this project included only normal and reasonable profit and overhead in addition to costs, and did not include any additional amount for return of equity contributions.

b. Independent reviews of the EPC Contract price by the TVA (for the DOE) and A.D. Little Company (for Bankers Trust) resulted in their opinions that the EPC Contract price was reasonable, indicating that equity was not included in these prices. There was thus independent confirmation the EPC Contract price was reasonable and competitive and not inflated.

c. The contracts for this project were lump-sum contracts, meaning the debtor was entitled to a plant constructed for the price set forth in the contract and the contractors bore the risk of any cost overruns resulting from poor estimates or other causes. Thus, the profit included in the contracts was at risk and not certain.

d. Because of problems with the plant, there were substantial cost overruns, the partners thus contributed tens of millions of dollars to the partnership over and above equity contributions, and the defendants actually lost substantial amounts of money on the project.

e. The defendants assert that the trustee's case is based upon the use of portions of certain documents, taken out of context, and that the trustee's case ignores extensive deposition testimony by persons who were responsible for the generation of the contract prices to the effect that equity was not included in any contract prices.

14. It is unlikely that the district court would grant the trustee's motion for partial summary judgment on the counts relating to the return of equity allegations. From this court's review of the adversary proceeding file, there appear to be material questions of fact relating to this issue that would preclude the granting of partial summary judgment. Moreover, there appears to be deposition testimony from several witnesses that, if believed by the jury, might result in a defendants' verdict on this theory. In particular, the defendants in the adversary proceeding rely on the deposition testimony of Ambrus Rabb, Jim Stanford, and Jose Coppen, who were all

Lummus employees responsible for determining the price charged to the debtor. These witnesses offered testimony which supported the defendants' defenses set forth in one of their many briefs that: "the contract price was normal or on the low side for the work involved; the projected profit margins, comprised of overhead and estimated profit before taxes, were likewise normal, and rapidly eroded by costs; and the price was in no way inflated by amounts of equity or otherwise—regardless of whether anyone else not actually involved in determining the price thought or expected otherwise." *See* Memorandum of Combustion Engineering, Inc. and Lummus Crest, Inc. filed January 11, 1991, at 4.

15. The defendants also challenge the notion that it is improper for a subsidiary of a limited partner to seek to earn a profit margin in at least the amount of its parent limited partner's capital contribution. The defendants argue that where the amount of a contractor's estimated overhead and profit before taxes is normal, it cannot matter whether the margin amount is less than, the same as, or greater than the amount of an affiliated company's capital contribution to the project. Such an argument may very well be appealing to a jury in the face of evidence, available to the defendants in this case, that the overall contract price was normal and reasonable and that under Tennessee law, specifically Tennessee Code Annotated § 61–2–113, a limited partner is authorized to do business with its limited partnership.

General Partner Claims

16. The trustee's general partner claims are found in counts I, II, and III. Count I is related to the trustee's return of partner's capital claim. The trustee alleges that a limited partnership was never formed because the plan to return the partner's equity was not disclosed in the debtor's certificate of limited partnership and that this constitutes a failure to substantially comply in good faith with the requirements of Tennessee Code Annotated § 61–2–102. The trustee asserts that all of the partners are therefore general partners and liable for the deficiency in the debtor's estate. The defendants vigorously dispute these allegations.

17. Count III asserts that, if a limited partnership was formed, it became a general partnership because of the failure to amend the debtor's certificate of limited partnership to reflect, among other things, the return of the partners' equity, the identity of all the partners, and changes in the partnership affairs brought about by two specific agreements.

18. The defendants assert there was no return of partners' equity. The defendants also assert there was no change in the debtor's affairs brought about by the specific agreements because these agreements, by their own terms, state that they were not to become effective unless approved by the DOE and Bankers Trust Company, and that approval was never received.

19. The defenses asserted by the defendants would largely depend upon the jury's view of the evidence as it relates to the return of equity allegations and any lack of good faith disclosure by the defendants in the limited partnership certificate. As previously stated, the defendants have evidence supporting their defense that there in fact was no return of equity. Also, the defendants could prevail on their contention that there was no change in the debtor's affairs brought about by the specific agreements because these agreements by their own terms did not become effective since they were not approved by the DOE and Bankers Trust.

20. In count II, the trustee asserts that the defendants are liable as general partners because the defendants exercised substantially the same powers as a general partner over the affairs of the debtor.

21. The defendants assert that none of them exercised enough control over the affairs of the debtor to be liable as general partners. The defendants assert that the various agreements relating to the partnership and the management of its affairs contain provisions guaranteeing that the general partner and the general partner alone would control the affairs of the partnership. In addition, the defendants point

to a number of examples of what they contend show the general partner in fact exercising control over the partnership, e.g., the general partner shutting the debtor's plant down from time to time for modifications, sometimes without consulting with or over the objections of one or more of the purportedly limited partners. The defendants also assert that all actions they took were within the safe harbor provisions of Tennessee Code Annotated § 61–2–107(b) and that there is nothing illegal or inappropriate with the limited partners consulting with others about the affairs of the debtor partnership, particularly in times of crises, when that consultation did not rise to the level of control.

22. Both the trustee and the defendants have evidence supporting their respective contentions concerning whether the limited partners exercised control over the debtor to such an extent that they should be held to be general partners. The ultimate outcome of this factual issue is difficult to predict and will turn primarily upon the jury's evaluation of all the evidence.

23. One overriding legal issue that is present with respect to the trustee's general partner claims concerns the amount of deficiency the trustee could collect from the defendants if they were held to be general partners. Presently, the trustee predicts the allowable claims in the Tennol bankruptcy case will approximate $73,000,000. Because there are essentially no assets now available presently in the Tennol estate to pay the claims, it can be stated generally that a deficiency exists in the estate of approximately $73,000,000. Of that amount, however, approximately $60,000,000 represents the claim amount asserted by the DOE and approximately $7,000,000 represents the claim amount asserted by Bankers Trust. Those claims are predicated upon loan documents providing that the DOE and Bankers Trust would have no recourse against the general partner in the event of default. Specifically, the Credit Agreement specifies that claims under the Agreement "shall be limited to the assets" of Tennol, and "no recourse shall be had against the General Partner". Moreover, the notes which Tennol signed to obtain the guaranteed loan from Bankers Trust state "[a]ll claims against Tennol and liabilities of Tennol arising under the Note ... shall be made only against and shall be limited to the assets of Tennol and no recourse shall be had by any holder of this Note ... against any Partner in Tennol in respect of such claims or liabilities."

24. The trustee is seeking recovery from the defendants of the deficiency in the Tennol estate under § 723(a) of the Bankruptcy Code which provides that "[i]f there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency." 11 U.S. C.A. § 723(a) (West Supp.1991). Because of the nonrecourse language contained in the loan documents, the defendants argue that even if found to be general partners, they would have no personal liability for the amounts owed the DOE and Bankers Trust. These arguments find some support in *In re Massetti*, 95 B.R. 360, 365 n. 7 (Bankr.E.D.Pa.1989) and *Pettigrew v. Barton (In re Barton & Ludwig)*, 37 B.R. 377 (Bankr.N.D.Ga.1984) (a general partner has no liability under § 723(a) to the extent that a creditor has released the general partner prepetition).

25. In ruling on the defendant's motion for summary judgment, the district court could well agree with the defendants that they could not be held liable for approximately $67,000,000 of the deficiency. Such an adverse determination to the trustee at this stage of the proceedings would substantially decrease the litigation risk the defendants are now facing and would in all likelihood adversely effect the amount of money the defendants are willing to pay in settlement. Any hope that trade creditors had of a substantial return in this case depended largely upon whether the trustee could recover that portion of the deficiency that relates to the DOE and Bankers Trust claims. Based upon the authorities mentioned, the legal defense raised by the de-

fendants to the DOE and Bankers Trust portion of the deficiency appears to have merit. If the trustee cannot recover that portion of the deficiency amount, then even if the trustee were able to obtain a few million dollars more in settlement, the proportional payout to trade creditors would not increase substantially since the DOE and Bankers Trust would still hold their sizeable claims. against the estate.

Payments to Limited Partners When Partnership Insolvent

26. In count VI, the trustee avers in the alternative that, if the defendants were limited and not general partners, then payments were made to limited partners at a time when the assets of the partnership were not sufficient to discharge partnership liability to persons not claiming as general or limited partners and that those payments were therefore unlawful pursuant to Tennessee Code Annotated § 61–2–113. This assertion refers to payments made to Lummus and Southland and requires that the trustee prove that Lummus and Southland, which did not sign the partnership agreement or purport to be partners, were in fact limited partners.

27. The defendants assert that Lummus and Southland are corporations which are separate and distinct from CE and Harbert and that Lummus and Southland were never partners of the debtor. Thus, the defendants argue that Tennessee Code Annotated § 61–2–113 is not operable here.

28. The defendants dispute the time at which the assets of the partnership became insufficient to discharge partnership liabilities to persons not claiming as general or limited partners. The trustee avers that this occurred at or shortly after the partnership was created. The defendants aver that this point was reached several years later.

29. There is also a dispute as to what financial or accounting standard applies in count VI. The trustee contends the traditional balance sheet test should apply. The defendants contend that only mature and owing liabilities should be included in determining insolvency.

Negligent Misrepresentation

30. In count VII, the trustee alleges that CE and Lummus made negligent misrepresentations regarding the LBW Ethanol Process which was to be used in the plant.

31. The defendants raise a number of defenses including that the LBW Ethanol Process technology was independently evaluated by the DOE and by A.D. Little (for Bankers Trust) and that key officials of the general partner were knowledgeable of ethanol production technology and had the capability to evaluate the LBW Ethanol Process on their own. Thus, the defendants assert that no reliance was or reasonably could have been placed upon representations of CE or Lummus. The defendants further aver that it was known prior to the construction of the debtor's plant that this plant would be the first commercial plant using the LBW Ethanol Process and that there were obvious risks inherent in the project. The defendants also state that paragraph 26.1 of the EPC Contract provides that the statements in the contract are controlling and that any misrepresentations outside the contract are waived. In addition, the defendants point to a provision in the EPC Contract which limits the defendant's liability to $1.2 million and say that has been paid. The defendants also aver that any misrepresentations were waived and any claims arising therefrom settled when the debtor agreed to a modification of the EPC contract.

32. Before the trustee could prevail under his negligent misrepresentation theory, he would have to overcome a number of the defendants' defenses including what may prove to be a formidable defense of no reasonable reliance in light of the independent evaluation by the DOE and Bankers Trust.

33. The defendants have raised other defenses, including: (a) that the trustee lacks standing to assert the claims in the adversary proceeding; (b) that the claims asserted in the complaint were lost by the foreclosure of a security interest granted by the debtor, as evidenced by a bill of sale executed October 27, 1988; (c) that the

trustee abandoned forever all claims asserted in the complaint, as set forth in the order of this court dated October 7, 1988; (d) that Lummus is entitled to a setoff or recoupment in excess of $15 million plus interest; and (e) that CE is entitled to a setoff or recoupment of more than $29 million, plus interest.

## C. *Present Status of Proceeding*

34. The discovery cutoff date in the adversary proceeding is July 31, 1991. The trustee expects the defendants to file additional motions for summary judgment relating to some of the defenses mentioned herein. The trustee estimates that 15 to 20 additional persons will be deposed by the parties in preparation for the trial. The trustee has employed experts who will expend additional time and generate additional expenses in trial preparation. The trustee estimates that approximately 50% to 60% of the work necessary to complete the case has been done leaving a substantial amount of work yet to be done.

35. The trial of the adversary proceeding is scheduled to begin on September 4, 1991. Given the crowded district court docket, postponement of the trial is possible. It is estimated that the trial will require from one to three months. Because of the number of factual and legal issues, the complexity of the case, and the amount in controversy, there is a substantial chance that an appeal will follow the trial which would delay a final resolution of the case for a considerable period.

36. The proposed settlement calls for the defendants to pay to the debtor's estate the sum of $4,995,000 in exchange for which the defendants would be released from further liability to the trustee or the debtor.

37. Both the trustee and the trustee's counsel (which has represented the trustee through his evaluation of possible claims and throughout the course of the adversary proceeding) recommend that the proposed settlement be approved by the court.

38. A major thrust of the trustee's adversary proceeding is seeking a return of equity allegedly wrongfully returned to the defendants. CE and Harbert, which were purportedly limited partners, each agreed to contribute equity of $7,224,000 to the debtor. Thus, the equity that the trustee seeks to be returned to the debtor's estate is approximately $14,000,000. However, the amount of equity returned could be less than this amount if the jury were to conclude that some, but not all of the partners' equity was added to the prices of the contracts for the construction of the debtor's plant in addition to estimated costs and a reasonable profit and overhead. The trustee estimates that a reasonable range of recovery for return of partners' equity is between $7,000,000 and $14,000,000 provided he is able to succeed in establishing liability. Thus, the proposed settlement of $4,955,000 represents a settlement of between 35% and 70% of this amount.

39. The trustee estimates that approval of this settlement would result in a payment to each creditor of approximately 4% of its claim, assuming that all claims filed are allowed.

40. Only one creditor, Hicks Enterprises, Inc., has objected to the proposed settlement. Hicks has filed a claim in the approximate amount of $200,000 which represents less than ½% of the total debt in this case. The major unsecured creditors, the DOE which is financing the litigation, and Bankers Trust, have not objected to the settlement proposal.

## II.

The trustee seeks an order approving a compromise of the federal court litigation pursuant to Bankruptcy Rule 9019(a) which states:

(a) *Compromise.* On motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement.

Bankruptcy Rule 9019(a).

■ "The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best inter-

ests of the estate." *In re Energy Coop.*, 886 F.2d 921, 927 (7th Cir.1989). As proponent of the proposed compromise, the trustee has the burden of persuading the court that the settlement is in the best interest of the estate and should be approved. *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr.N.D.Ohio 1990); *In re Hanson Indus.*, 88 B.R. 942 (Bankr.D.Minn.1988).

 In deciding whether to approve a proposed compromise, a bankruptcy court should consider the probabilities of ultimate success in litigation, the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting any judgment that might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, *reh'g denied*, 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968); *In re Culmtech, Ltd.*, 118 B.R. 237 (Bankr.M.D.Pa.1990). The court may give weight to the opinions of the trustee, the parties, and their counsel in evaluating the reasonableness of the proposed compromise. *In re Lawrence & Erausquin, Inc.*, 124 B.R. at 38; *see also Magill v. Springfield Marine Bank (In re Heissinger Resources)*, 67 B.R. 378, 383 (C.D.Ill.1986).

 "In determining whether to approve the Trustee's proposed settlement, the Court does not substitute its judgment for that of the Trustee." *In re Lawrence & Erausquin, Inc.*, 124 B.R. at 38; *see also In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D.Pa.1986); *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr.S.D. N.Y.1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985). Instead, the court should, without conducting a trial or deciding the numerous questions of law and fact, "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Anaconda–Ericsson, Inc. v. Hessen (In re Teltronics Servs.)*, 762 F.2d 185, 189 (2d Cir.1985) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983)); *see also In re Lawrence & Erausquin, Inc.*, 124 B.R. at 38; *In re Technology for Energy Corp.*, 56 B.R. 307, 311–312 (Bankr.E.D.Tenn.1985).

The adversary proceeding pending in the district court is clearly complex. The litigation presents far more legal and factual issues than one would expect in the average lawsuit. The trial of the case is estimated to last from one to three months. The legal issues that have been raised are numerous, often complex and little guidance is provided in the case law for some of the issues. Continuing the litigation through trial and possible appeal will necessarily involve a great deal of additional administrative expense.

With respect to the collectability of any judgment rendered in favor of the trustee, it does not appear at this time that the trustee would have any problem collecting a judgment from the defendants other than a possible delay in collecting the judgment should a lengthy appeal process follow the trial.

It is, of course, difficult, if not impossible, to predict the outcome of litigation such as that at issue here. The trustee has alleged a number of theories of recovery and the defendants have asserted numerous legal and factual defenses. Although the trustee has filed motions for partial summary judgment, the court does not believe the trustee would be successful in obtaining a summary judgment on any of its claims since material issues of fact appear to be present which would preclude the granting of summary judgment in the trustee's favor. It is more likely, in this court's view, that partial summary judgment would be granted in favor of the defendants on their defense that the trustee cannot recover that portion of the estate's deficiency claim attributed to the claims of the DOE and Bankers Trust in the approximate amount of $67,000,000 since the loan documents underlying those claims expressly deny recourse against the partners of the debtor. If the trustee were to lose on this issue in the pretrial stages of the litigation, the trustee's bargaining

position for obtaining a favorable settlement would decrease substantially.

Because the defendants possess a substantial legal defense to the trustee's attempt to recover that portion of the deficiency attributed to the DOE and Bankers Trust claims, the court does not find it unreasonable that the trustee has arrived at a settlement figure based primarily upon an evaluation of a recovery under his theory relating to a wrongful return of capital. This theory is the one the trustee believes offers his best chance for recovery. Even under this theory, however, the trustee faces substantial risks in that the defendants possess evidence supporting their defense there was no wrongful return of capital and that the price under the EPC contract was fair and reasonable. Also, the jury will likely hear evidence that the defendants themselves lost millions of dollars in performing under the contract.

Utilizing his theory of wrongful return of capital, together with the threat of potential recoveries under his other theories of recovery, the trustee has extracted through arm's length bargaining with the defendants a settlement figure representing between 35% and 70% of the equity allegedly withdrawn by the defendants. Considering the substantial factual and legal disputes presented in the district court litigation, the risks inherent in trying a complicated case to a jury, the views of the trustee and his counsel who have carefully reviewed all of the depositions and documents in the case, the absence of objections from all but one of the debtor's creditors, and all of the other factors mentioned herein, the court concludes that the proposed compromise does fall within a range of reasonableness. Since the trustee has satisfied his burden of persuasion that the settlement would be in the best interests of the estate, the compromise will be approved.

The trustee shall submit an appropriate order.