**In re 110 BEAVER STREET PARTNERSHIP, Debtor.**

**Bankruptcy No. 97–11104–CJK.**

United States Bankruptcy Court,
D. Massachusetts,
Boston Division.

Feb. 8, 2000.

Harold B. Murphy, Hanify & King, Boston, MA, Chapter 7 Trustee.

Paul D. Moore, Duane, Morris & Heckscher, L.L.P., Boston, MA, for Debtor.

### MEMORANDUM OF DECISION ON TRUSTEE'S MOTION TO APPROVE STIPULATION IN SETTLEMENT OF CLAIMS WITH GOFFE, INC. AND OTHERS AND TO TERMINATE TRUST

CAROL J. KENNER, Bankruptcy Judge.

By the motion now before the Court, the Chapter 7 Trustee, Harold B. Murphy, seeks approval of a compromise between himself and Goffe, Inc. ("Goffe"), of certain claims asserted against Goffe by the Debtor, 110 Beaver Street Partnership, and by the Trustee, all of which belong to the Debtor's bankruptcy estate. Goffe was the Debtor's principal creditor in this case. Under the compromise, Goffe would pay the Trustee the sum of $135,000 and waive any further claims in this case; and, in exchange, the Trustee would release any and all claims against Goffe (and its agents and affiliates [1]) and terminate the 110 Beaver Street Trust, of which the Debtor is sole beneficiary. The Debtor and its three general partners, Jeff Buster, Martha Jean Eakin, and Paul McGinty, have filed a joint opposition to the motion; Goffe has filed a brief in support of the compromise.

---

1. The agents and affiliates expressly include, but are not limited to, Duffy Brothers Management Co., Inc., Norman J. Duffy, Robert L. Duffy, and Kevin Duffy.

After a hearing and for the reasons set forth below, the Court will deny the motion.

## Law Governing Approval of Compromises

 Federal Rule of Bankruptcy Procedure 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The burden is on the trustee to demonstrate that the compromise is in the best interest of the estate and should therefore be approved. *In re C.P. del Caribe, Inc.,* 140 B.R. 320, 326 (Bankr.D.Puerto Rico 1992); *In re Hydronic Enterprise, Inc.,* 58 B.R. 363, 365 (Bankr.D.R.I.1986). In deciding whether to approve a proposed compromise, the bankruptcy court does not substitute its judgment for that of the trustee. *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D.Pa.1986); *Matter of Carla Leather, Inc.,* 44 B.R. 457, 465 (Bankr. S.D.N.Y.1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985); *In re Hydronic Enterprise, Inc.,* 58 B.R. at 367; *In re Bell & Beckwith,* 77 B.R. 606, 612 (Bankr.N.D.Ohio 1987); *In re Tennol Energy Co.,* 127 B.R. 820, 828 (Bankr.E.D.Tenn.1991).

 Nonetheless, the Court has an independent obligation to satisfy itself that the proposed compromise falls above "the lowest possible point in the range of reasonableness." *In re W.T. Grant & Co.,* 699 F.2d 599, 608 (2d Cir.1983), *cert. denied* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97; *Matter of Energy Co-op., Inc.* 886 F.2d 921, 929 (7th Cir.1989) (the standard is whether "the terms of the proposed compromise fall within the reasonable range of litigation possibilities"); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. at 803; *Matter of Carla Leather, Inc.,* 44 B.R. at 465; *In re Hydronic Enterprise, Inc.,* 58 B.R. at 366; *In re Bell & Beckwith,* 77 B.R. at 612; *In re Tennol Energy Co.,* 127 B.R. at 828. The court may not act as a mere rubber stamp or rely on the trustee's word

that the compromise is reasonable. *Reynolds v. C.I.R.,* 861 F.2d 469, 473 (6th Cir. 1988). Rather the Court must act "independently, out of its own initiative, for the benefit of all creditors." *Matter of Boston & Providence Railroad Corporation,* 673 F.2d 11, 13 (1st Cir.1982). The Court must "form an independent judgment of the complexity, expense, and likely duration of litigation, as well as any other factors to a full and fair assessment of the wisdom of the compromise." *Id.* at 12; *Reynolds v. C.I.R.,* 861 F.2d at 473 ("the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable").[2] In sum, the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the "range of reasonableness" and thus is not an abuse of his or her discretion.

 In evaluating the reasonableness of the compromise, the bankruptcy court "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Anolik,* 107 B.R. 426, 429 (D.Mass.1989). In particular, the court should consider the following specific factors:

(a) the probability of success in the litigation;

(b) the difficulty, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors and a proper view to their reasonable views in the premise.

*Id.*

## Factual Background

There is no dispute about most of the operative facts. The Debtor, 110 Beaver

---

**2.** Moreover, the Court's analysis must "be set forth on the record in sufficient detail that a reviewing court could distinguish it from

'mere boilerplate approval' of the trustee's suggestions." *Matter of Boston & Providence Railroad Corporation,* 673 F.2d at 12.

Street Partnership filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 7, 1997. The partnership is the sole beneficiary of the 110 Beaver Street Trust ("the Trust"), whose sole trustee is Jeff Buster. Upon the Debtor's bankruptcy filing, the Trust held title to the real property at 110 Beaver Street, Waltham, Massachusetts ("the property"). As of the date of the bankruptcy filing, the property was principal asset of the Debtor's bankruptcy estate, and the Debtor's business was the ownership and management of the property. The property was at that time encumbered by a first mortgage originally given by the Debtor to George W. Moore, Inc. ("Moore") in 1994, when the Debtor acquired the property from Moore. The mortgage secured an obligation on a promissory note from the Debtor to Moore in the original principal amount of $850,000.

In 1996, certain affiliates of Goffe—Duffy Brothers Management Co., Norman J. Duffy, Robert L. Duffy, and Kevin Duffy (collectively, "Duffy Brothers")—submitted to the Waltham Conservation Commission a notice of intent for a proposed retail development at a site near the Debtor's property. The Trust and the Debtor's principals opposed the development by interposing objections to it before the Waltham Conservation Commission. When the Commission approved the proposed development, the Trust appealed to the Department of Environmental Protection, which issued an order staying the development pending appeal. Around the same time, the Debtor's principals also commenced a civil action in which they challenged the Commission's decision as having been filed in violation of the Massachusetts Open Meeting Law, G.L. c. 39.

In November, 1996, while the appeal and civil action were pending—and stalling the Duffy Brothers' development plans—Moore commenced foreclosure proceedings on the property. The Debtor contends that Moore did so at Goffe's behest. The Debtor had been in default of its obligations on the mortgage to Moore for some time. However, according to the Debtor, Moore had until then been content to forbear from foreclosing in exchange for the Debtor's own forbearance on a counterclaim against Moore (for breach of an obligation in the purchase and sale agreement to remove inventory and equipment from the property).

Approximately two weeks after Moore commenced foreclosure proceedings in the Land Court, Goffe purchased the Debtor's promissory note and mortgage from Moore for $480,000.[3] As the Debtor was then in default of its obligations on the note, Goffe continued the proceedings instituted by Moore and proceeded toward foreclosure of its newly-acquired mortgage on the property. Goffe scheduled a foreclosure sale for February 7, 1997, but the Debtor filed its Chapter 11 petition that day and thereby stayed the foreclosure for a time.

Around the same time, the Debtor and its principals filed a complaint against Duffy Brothers and Goffe in Middlesex Superior Court. As amended, the complaint asserts two sets of claims against Goffe (both of which are among the claims that the Trustee now seeks to compromise). The first, which the parties have loosely referred to as the Civil Rights Claims, are based on the Debtor's central assertion that Goffe acquired and used the Debtor's mortgage for the improper purpose of intimidating the Debtor into withdrawing its previously filed civil action and opposition to the Duffy Brothers' development, and that Goffe thereby interfered with a mutually advantageous relationship between the Debtor and Moore, under which Moore had been content to forbear from enforcing its rights under the mortgage. On the basis of these allegations, the Debtor as-

---

**3.** Goffe bought the note and mortgage cheaply. Goffe's purchase price of $480,000 was considerably less than the amount due on the promissory note at the time the Chapter 11 petition was filed, which was more than $1,000,000.

serts claims against Goffe for violations of the Massachusetts Civil Rights Act, the Massachusetts Consumer Protection Act, and the Massachusetts Anti–SLAPP statute, breach of the contractual covenant of good faith and fair dealing, and intentional interference with contractual and advantageous relations; and they also seek to impose a constructive trust on the promissory note and mortgage for the Debtor's benefit.

The second set of claims is referred to as the Storage Claims. These are based on allegations that Moore breached its obligations under its purchase and sale agreement with the Debtor to timely remove certain of its inventory (including hazardous waste), equipment, and records from the property. On the basis of these and related allegations, the Debtor states claims for damages against Moore (unspecified amounts for storage and cleaning charges) on theories of breach of contract, breach of the contractual covenant of good faith and fair dealing, and violation of the Massachusetts Consumer Protection Act. Though these claims are principally against Moore, the Debtor also asserts them against Goffe, arguing that they are enforceable by setoff against Goffe because the purchase and sale agreement between Moore and the Debtor was incorporated by reference into the promissory note that the Goffe acquired from Moore and that forms the basis of Goffe's secured claim against the Debtor.

With this complaint pending, Goffe moved in the bankruptcy case for relief from the automatic stay to foreclose its mortgage; on the basis of the promissory note and mortgage, Goffe was asserting a secured claim in this case in the amount of $1,131,836.58 (as of the date of the bankruptcy filing). The Debtor opposed the motion for relief, stating that the property was necessary for a successful reorganization that was in prospect, and that the amount of the debt to Goffe was much lower than asserted because of the Debtor's Civil Rights and Storage counterclaims.

While the motion for relief was pending, Goffe or one of its affiliates contacted the Mayor of Waltham about possible building code violations on the Debtor's premises. This resulted in an inspection of the Debtor's property by the Town's building inspector, who cited the Debtor for building code violations and issued a cease-and-desist order. The order effectively prohibited the Debtor's tenants from occupying the premises and consequently prevented the Debtor from earning rent from the property, its only source of income. The Debtor contends that Goffe instigated the inspection in bad faith, not to enforce concerns about building safety but to harass the Debtor and cripple its reorganization effort. Therefore, the Debtor argues, Goffe's instigation of the Town's action constituted a willful violation of the automatic stay, for which the Debtor is entitled under § 362(h) of the Bankruptcy Code to actual and punitive damages and attorney's fees (the "Stay Claim").

On July 28, 1997, at a hearing in the Bankruptcy Court, the Debtor and its principals entered into a global settlement agreement with Goffe and its affiliates. Under the agreement, Goffe agreed to cap its secured claim at $750,000[4] and to support a plan of reorganization under which the Debtor would amortize that claim at nine percent interest over twenty years; in exchange, the Debtor and the Trust agreed (1) to release Goffe and its affiliates from all claims, (2) to dismiss all litigation and appeals concerning the Goffe's proposed development, and (3) not to interfere further with Goffe's development. The stipulation further provided that Goffe would release the Debtor's partners from

---

4. The stipulation provided that the Debtor's claim would be allowed in the amount of $950,000, including a secured claim of $750,000.00 and an unsecured claim for the balance, but also that Goffe would waive its right to any distribution on the unsecured claim in the then-contemplated plan of reorganization.

any liability on the promissory note if they likewise released Goffe and its affiliates from all claims and dismissed all pending matters concerning Goffe. The stipulation was signed by Goffe, the Debtor, the Trust, and the Debtor's three partners.

On July 31, 1997, the Debtor moved for an order approving this stipulation, and Jeff Buster (who had himself signed the motion individually and for the Debtor and the Trust, and who orally represented to the Court that he wanted to settle on the terms stated) opposed the motion. On August 25, 1997, the Court held a hearing on the motion to approve the stipulation, together with a continued hearing on Goffe's still-pending motion for relief from the automatic stay, and on the motion for appointment of a Chapter 11 Trustee that Goffe had filed a month earlier. At the hearing, the Court allowed the motion for appointment of a Chapter 11 Trustee and continued the other two matters generally. The United States Trustee appointed Harold Murphy to be Chapter 11 Trustee, and, on application of the U.S. Trustee, the Court approved the appointment. After a further hearing on August 27, 1997, the Court allowed the motion to approve the Debtor's stipulation with Goffe. However, the Debtor then reneged on the agreement and refused to perform its obligations thereunder.

Consequently, Goffe asked the Court to allow its motion for relief from stay, and the Court allowed the motion. In April, 1998, Goffe sold the property at foreclosure for $1,311,000.00. Goffe later submitted an accounting to the Trustee under which it stated that its claim had increased to a total of $1,316,027.00, including principal and interest totaling $993,556.49, and various legal fees totaling $288,000; accordingly, Goffe retained all the foreclosure proceeds and filed an unsecured deficiency claim for $5,027.00. On motion of the Trustee, the Court converted the case to one under Chapter 7 on June 2, 1998. Harold Murphy was subsequently appointed Chapter 7 Trustee.

The Chapter 7 Trustee argues that Goffe's claim for $1,311,000 is excessive in that it includes reimbursement for legal fees of $288,000, of which he believes ten to twenty percent is excessive, and duplicate fees for management/labor charges that total $20,320. The Trustee's claim against Goffe for proceeds retained in excess of the proper amount of its claim is referred to herein as the Proceeds Claim.

The unsecured prepetition claims against the estate total approximately $48,-000; and the Trustee estimates that the estate owes between $79,000 and $84,000 in administrative expenses. If the compromise were approved, the proceeds of $135,000 would enable the estate to pay all administrative and unsecured claims in full but would leave virtually no remainder to distribute to the Debtor or its partners. On the other hand, if the Trustee were to recover nothing on the claims now being compromised, administrative creditors would receive no more than a ten percent dividend, and unsecured creditors would receive nothing.

After the Trustee entered into this settlement agreement with Goffe, the Debtor's partners made a counteroffer to the Trustee to purchase the claims now being settled for a total of $135,000.00, including cash of $60,000 and a promissory note for the remainder, secured by a mortgage on property of one of the principals. The Trustee believes the offer from Goffe is better for the estate because Goffe would pay the full settlement immediately, obviating delay, contingencies, and possible collection expenses. Moreover, the Trustee's agreement with Goffe is subject only to final approval by the Court, not to counteroffers.

### Arguments

By the motion before me, the Trustee seeks to settle five categories of claims against Goffe: the Civil Rights, Storage, Stay, Proceeds, and Fiduciary Duty

Claims.[5] The Trustee argues that $135,-000 represents a reasonable compromise of the five claims for the following reasons. First, the proceeds would permit payment in full of all remaining administrative and unsecured claims, most of which would, in the absence of recovery against Goffe, remain entirely unpaid. Second, although the Trustee seems confident that he would succeed against Goffe on the (relatively small) Proceeds Claim, the prospect of a substantial recovery on the other claims is highly uncertain. Third, the estate has almost no funds to hire counsel to prosecute the action; the Trustee would not hire Attorney David Fine, who now represents the Debtor and the partners, because Mr. Fine represents the partners and therefore has an interest adverse to the estate on the matter at issue; and it is not clear that the estate would be able to hire counsel on a contingency fee basis. And fourth, any recovery on the Goffe claims would occur later, after completion of litigation in both state Superior Court and U.S. Bankruptcy Court, and probably appeals from both, and would be subject to reduction for the estate's attorney's fees. Although the settlement does not allocate the total recovery of $135,000 among the claims being settled, the Trustee, when asked by the Court to provide a breakdown, attributed approximately $50,000–$60,000 to the Proceeds Claim, nothing to the Storage and Stay Claims, and the remainder to the Civil Rights Claim, which he believes is weak.

The Debtor and its principals (collectively, "the Principals") oppose the motion on numerous grounds. The first three concern process. They first contend that the Trustee has neither adequately familiarized himself with the claims he is seeking to compromise nor addressed those claims in sufficient detail to permit the Court to find that he has sustained his burden with respect to the compromise. Second, they contend that the amount of the settlement was determined without reference to the merits of the claims, solely by determining the amount that would be necessary to pay all claims senior to those of the partners, and that this represents a breach of the Trustee's fiduciary duty to the equity interest holders as residual claimants with respect to the proposed settlement. And third, they contend that the Trustee and Goffe improperly excluded the partners from the settlement discussions.

The Principals also dispute the Trustee's dim view of the merits of two claims. They contend that, as a judge of the Superior Court has already ruled on their motion for preliminary injunction, the estate has a high likelihood of success on the Civil Rights Claims. They also argue that if the estate is successful on the Civil Rights Claim, Goffe will be required to disgorge the $290,000 in fees it recovered from the foreclosure proceeds for defending against the Civil Rights Claim, and Goffe would further be required to pay the estate's attorney's fees in prosecuting that claim. And as further remedy for the Civil Rights violations, they contend, Goffe would not be permitted to profit by its violation and therefore would be required to disgorge to the estate the $513,000 profit it received upon sale of the mortgage that it purchased from Moore for an improper purpose.[6]

---

5. Only the Fiduciary Duty Claim is not mentioned or explained above. The Trustee identifies it only as a claim asserted by the Debtor against *Moore* for failing to forward to the Debtor certain notices respecting the property, but, incongruously, the Trustee also identifies this claim as one being compromised. Aside from the Trustee's identification of the claim, I have been offered no evidence or explanation of the facts giving rise to it, nor any explanation as to how it might constitute a claim against Goffe. The Trustee states that this claim has no value and attributes no portion of the proposed settlement to it; and the Debtor has not disputed the Trustee's judgment on this claim.

6. Goffe purchased the mortgage from Moore for $480,000 and then liquidated it some 18 months later at full face value and thereby recovered principal and interest of $993,000.

The Principals also contend that they have a high likelihood of success on the Stay Claim. They argue that, although the automatic stay does not prohibit a municipality from exercising its police powers, it does prohibit a secured creditor from instigating the enforcement of those powers to gain leverage over the Debtor, to interpose obstacles to reorganization, and thereby to influence the outcome of its pending motion for relief from stay to foreclose its mortgage. The Debtor argues that Goffe clearly instigated the building code enforcement action for just these purposes, and that, under § 362(h) of the Bankruptcy Code, the estate would recover actual damages (these are unspecified), interest, attorney's fees, and punitive damages for this violation of the automatic stay.

The Principals make two further arguments against the compromise. First, they argue that the proposed recovery is inadequate because it includes no component for the fees of Attorney Fine, whose efforts on behalf of the Principals are what precipitated Goffe's agreement to return any proceeds at all to the estate. The Court has denied the Debtor's motion to employ Mr. Fine to represent the estate in this matter, but this order is on appeal. If it were reversed on appeal, argue the Principals, then the estate would be obligated to pay Mr. Fine's reasonable fees. (The Court has no evidence or estimate as to the present amount of Mr. Fine's fees.) The Trustee, however, has not accounted for such fees in his expected distribution of the proceeds; and he did not consider them in negotiating the amount of the settlement.

Lastly, the Principals argue that the compromise should not be approved because approval would be tantamount to furthering or rewarding Goffe's illegal efforts. In such circumstances, they argue, the opponents of the compromise should be given every opportunity to make a competing offer.

In reply to the Principals' arguments and in defense of the settlement, Goffe makes three arguments: that the estate's chances of establishing liability on the Civil Rights and Stay Claims are slim; that even if the estate can establish liability, it is unlikely to obtain substantial damages on those claims; and that regardless of the merits of the claims themselves, the estate cannot prevail on them because, as part of the approved settlement agreement between Debtor and Goffe, the Debtor promised to release and dismiss all its claims against Goffe and its affiliates, and that promise is now enforceable against the estate.

### Discussion

As a preliminary matter, the Court must first address the Principals' contentions that the Trustee has neither adequately familiarized himself with the claims he is seeking to compromise nor, in his motion to approve compromise, addressed those claims in sufficient detail to permit the Court to find that he has sustained his burden with respect to the compromise. After a hearing on the motion, the Court finds that the Trustee has adequately researched and familiarized himself with the claims. And the Court further holds that the strengths and weaknesses of the various claims, and of the compromise as a whole, have been presented to the Court in sufficient detail to permit the Court to determine whether the compromise is reasonable and whether the Trustee has abused his discretion in assenting to it.

As the Principals correctly contend, the Trustee has a fiduciary duty to them, as holders of equity interests in the Debtor, and he also has a duty to investigate the merits of these claims before compromising them. However, it does not follow that he was obligated to consult with them or their counsel about the merits of the claims, or to include them in compromise discussions. The Trustee's fiduciary obligations extend to the estate as a whole, not solely to the Principals, and in particular they extend to the unsecured

creditors, whose interests, at least with respect to this particular compromise, are (1) directly opposed to the Principals' and (2) prior in right of distribution to those of the equity holders. 11 U.S.C. § 726(a). The Principals have no interest in a settlement that will provide no return to them. But the unsecured creditors, whose claims have priority over the partners' equity interests, have every reason to accept this settlement—it will pay their claims in full—and not to reject it in favor of an uncertain recovery in the future. The Trustee could reasonably conclude that the Principals' views on these claims and on the settlement would not be helpful to him. Moreover, in view of the further fact that the Principals reneged on an earlier, very favorable settlement of these same claims, the Trustee could also reasonably conclude that (1) they are not reliable bargaining partners and (2) that it might not be in the estate's interest to make them parties to the negotiations or the settlement agreement. The Trustee did not breach his fiduciary duty to the Principals by excluding them from negotiation of this agreement.

 I next turn to the merits of the claims being settled, beginning with the three as to which the Principals have articulated no basis of objection.

### 1. *Fiduciary Duty Claim*

The first is the Fiduciary Duty Claim. The Trustee identifies it only as a claim asserted by the Debtor against *Moore* for failing to forward to the Debtor certain notices respecting the property. The Trustee states that this claim has no value and attributes no portion of the proposed settlement to it. The Principals have not

disputed the Trustee's judgment on this claim, and I see no reason to do so either.

### 2. *Storage Claim*

Second is the Storage Claim. The Debtor seeks compensation from Goffe for this claim in the state court proceeding, but the claim lies principally against Moore, and therefore the Trustee strongly doubts that the estate could recover storage charges from Goffe. Accordingly, the Trustee attributes no portion of the settlement proceeds to this claim. It is not clear whether the Principals agree with the Trustee about the strength of the Storage Claim, but none of the arguments they have offered in opposition to the settlement is predicated on the merits, treatment, or worth of this claim.[7] Nonetheless, the Court has an independent obligation to consider its merits.

The stored inventory belonged to Moore, not Goffe; and Goffe was not a party to the purchase and sale agreement (the "P & S"), in which Moore agreed to remove the stored inventory. However, Goffe purchased the Debtor's promissory note from Moore, and, according to the Principals' state court complaint, the promissory note expressly states that it is "subject to the provisions of the [P & S]." On the basis of this clause, Superior Court Judge Sosman denied Goffe's motion to dismiss this claim, ruling that Moore's breach of its obligation to remove the inventory would entitle the Debtor to a setoff against its obligations to Goffe under the promissory note. On the strength of these facts, I find that the only reason that the Trustee has offered for finding this claim to be without value— that the estate is unlikely to be able to establish liability—is without support. The Trustee has provided me with no indi-

---

7. In the opposition that the Principals filed to the Trustee's Motion to Approve Compromise, the Principals addressed only the Civil Rights claim, stating that they intended to filed a second part of their opposition that would address the remaining four claims. By local rule, the complete opposition was due ten days after the motion was filed. MLBR 9013-

1(d). In any case, the hearing on the motion was held 45 days after the Principals filed what they call "Part One" of their opposition, but (except for certain exhibits filed on the date of the hearing) they filed no further opposition before the hearing. They did not address the storage claim and therefore have waived any right to challenge it.

cation whatsoever of the extent of damages that the Principals sought or that the estate might reasonably expect on this claim. Therefore, I cannot find that the Trustee has satisfied his burden with respect to the compromise as a whole.

### 3. *Proceeds Claim*

The third claim at issue is the Proceeds Claim, including all claims arising from the Goffe's disposition of the proceeds of the foreclosure sale. The Trustee attributes approximately $50,000–$60,000 of the settlement to this claim, mostly based on alleged excesses in Goffe's attorney's fees and property-management costs. Again, none of the arguments that the Principals have offered in opposition to the settlement is predicated on the merits, treatment, or worth of this claim. (The Principals do argue, under the Civil Rights Claim, that the estate would be entitled to remission of the proceeds that Goffe applied to its attorney's fees for defending against that claim, but I will address that issue under the Civil Rights Claim.) Having reviewed Goffe's foreclosure accounting, the Court finds that $50,000–$60,000 is a reasonable compromise of the objections that, at least on the face of the accounting, can be raised to the management and attorney's fees items.

However, the accounting raises another major issue: that Goffe has charged the proceeds for amounts grossly in excess of the $750,000 to which it agreed to limit its claim, including $993,556.49 for principle and interest, $154,989.30 for bankruptcy costs, and $96,039 for litigation expenses.[7] In the approved settlement agreement between the Debtor and Goffe of July 28, 1997, Goffe agreed to limit its secured claim on the promissory note to $750,000.00. Of course, the Debtor subsequently refused to perform its obligations under the agreement, but it is hardly clear that the settlement agreement was thereby rendered a nullity. Goffe itself, in defending the present settlement, argues that the estate has little chance of success on the Civil Rights and Stay claims precisely because the estate remains bound by the promise that the Debtor (then a debtor-in-possession, and as such the representative of the estate) made in that settlement agreement to release and dismiss all claims and proceedings against Goffe.[8] If, as Goffe contends, the agreement remains in force, and is not effectively rescinded, then Goffe's claim is limited to $750,000, plus the foreclosure costs and rental costs. The charges itemized above, totaling $1,244,584.79, are inexplicable and overstated by nearly $500,000. The Trustee never explains why the present compromise should not include, in addition to the amounts it already includes for the Proceeds Claim, remission of the difference between $1,244,584.79 and $750,000. In view of the uncertainty about the status of the settlement agreement and of Goffe's recourse to the settlement in defense of this compromise, I cannot hold that the Trustee's compromise meets the standard for approving a compromise. Given the magnitude of this omission, and the lack of explanation for it, the Court must conclude that the proposed compromise falls well below the range of reasonableness.

### 4. *Civil Rights Claim*

The Trustee states that the remainder of the compromise, approximately $75,000,

---

7. I take no exception to the charges for foreclosure costs and rental operations, because neither were contemplated by the settlement agreement, and both were necessary once Goffe was granted relief from the automatic stay to exercise its rights under the mortgage.

8. In the settlement agreement, Goffe bargained for and received two things: recovery of $750,000 on its mortgage, and releases from the Debtor of all claims against Goffe and its affiliates. Despite the Debtor's refusal to follow through with a plan that conformed to the agreement, Goffe has already received the first (by its recovery at foreclosure), and, in the present compromise, the Trustee would deliver the second. The Trustee has not offered an explanation as to why, now that he is following through on the Debtor's agreement, the estate should not now reap the benefit of the bargain.

is attributable primarily to the Civil Rights Claim. The Trustee contends that this recovery is justified because he thinks it unlikely that the estate can establish that Goffe purchased the Debtor's mortgage from Moore for the purpose of intimidating the Debtor into dismissing the appeal and civil action that were stalling Goffe's development plans. The Principals counter that all evidence suggests that the estate is likely to establish liability on the Civil Rights Claim, and that damages will include (1) attorneys' fees, (2) disgorgement of Goffe's profit on the mortgage, and (3) disgorgement to the estate of the foreclosure proceeds that Goffe applied to the attorneys' fees it incurred in defending against the Civil Rights Claim. In defense of the settlement, Goffe adds that the meager recovery on this claim is further justified by three considerations: that the Debtor's promise to release these claims remains specifically enforceable; that, even if Goffe had intended to intimidate, it did not succeed in intimidating the Debtor into relinquishing its objections; and that, even if liability were established, the Debtor would not obtain damages of any significance because, if Goffe were obligated to disgorge its profits, the profits would be returned to Moore, not the estate.

The Court concludes that the estate would be likely to establish liability on this claim. The evidence suggests that Goffe may have obtained and used this mortgage to intimidate the Debtor into abandoning its opposition to their development plans; and, on the Principals' motion for preliminary injunction in the civil rights action, Judge Sosman of the Superior Court ruled that the Principals were likely to prevail on this claim. Therefore, the $75,000 the Trustee has agreed to accept appears too low under the circumstances. I also disagree with Goffe that it was unsuccessful in forcing the Debtor to abandon its opposition to their development; by virtue of Goffe's control of the mortgage, the Debtor, in its settlement agreement with Goffe, agreed to release and dismiss its appeal and civil action and all other opposition to

Goffe's development. As for damages, the estate would almost certainly, at a minimum, recover its own attorneys' fees and an order requiring Goffe to disgorge the $96,000 in foreclosure proceeds that it applied to its own expenses of defending against the Civil Rights Claim. Assuming conservatively that the estate's own fees equaled Goffe's as of the date of the accounting, Goffe would stand to lose, and the estate to gain, approximately $200,000 on these two items of damages alone. And Goffe faces a real possibility of substantial additional damages, whether by disgorgement (even to Moore, if not the estate) or on some other basis.

The most serious weakness of this claim is Goffe's affirmative defense that the claim has been released. The status of the settlement agreement between the Debtor and Goffe is not clear, but as Judge Sosman herself ruled, Goffe cannot have the benefits of the settlement without its burdens. If the settlement is enforceable, then the Civil Rights Claim is released, but Goffe is limited to a secured claim of only $750,000.00; if the settlement is not enforceable, then Goffe is entitled to full principal and interest but also faces liability on this claim of at least $250,000 and, not unreasonably, as much as three times that sum. Under either scenario, the present compromise is deficient.

### 5. *Stay Claim*

Last is the estate's claim against Goffe and its affiliates for violating the automatic stay. The Principals contend that Goffe violated the stay by instigating the Town of Waltham's building-code enforcement action for the purposes of gaining leverage over the Debtor, interposing obstacles to reorganization, and thereby influencing the outcome of its pending motion for relief from the automatic stay to foreclose its mortgage. The Principals argue that Goffe clearly instigated the enforcement action for these purposes, and not out of concern for the condition of the premises,

and that, under § 362(h) of the Bankruptcy Code, the estate would recover actual damages (these are unspecified), interest, attorney's fees, and punitive damages for this violation. The Trustee attributes none of the settlement to this claim, arguing (1) that Goffe's conduct may have been motivated by legitimate concern for the safety of the Debtor's tenants and (2) that even if Goffe's intent were not pure, damages would be difficult to prove because, at foreclosure, the property sold for $200,000 more than the appraised fair market value of the property.

The Trustee unreasonably underestimates the merits of this claim. Without prejudging their intent, a reasonable factfinder could view the circumstantial evidence as suggesting that, in approaching the mayor of Waltham, Goffe's principals did not act with pure motive. And damages are not obviated by the recovery at foreclosure. The Debtor suffered actual damage by losing the property and the future profits it might have generated, and the estate would also be entitled to attorney's fees. The extent of recoverable damages here is difficult to predict with certainty on the record before me, but surely it is something beyond attorney's fees. It is not clear whether Goffe contends that this claim, too, has been released. But again, as with the Civil Rights Claim, Goffe cannot have the benefits of the settlement without the costs. If the settlement is not binding as to the cap on the amount of its secured claim, then this claim, too, should figure into the compromise.

*Conclusion*

In summary, I hold that the proposed settlement does not, by a large margin, fall within the range of reasonable compromises of the claims at issue. The shortfall directly affects the Debtor and its equity interest holders, whose objection to the settlement must therefore be sustained. Given the magnitude and likelihood of substantial additional recovery here, the fact that this compromise would assure payment in full of all administrative and unsecured claims does not suffice to justify its approval. A separate order will enter denying the motion.