In re MEDIA CENTRAL, INC., Debtor.

In re JACKSON TELEVISION, LTD., Debtor.

Douglas R. JOHNSON, Liquidating Trustee for Media Central, Inc., and The Official Unsecured Creditors Committee of Media Central, Inc., Plaintiffs,

v.

JACKSON FAMILY TELEVISION, INC., and H. Bernard Dixon, Defendants.

No. 1–93–cv–0231.

United States District Court, E.D. Tennessee, at Chattanooga.

May 23, 1994.

Douglas R. Brace and Michael Gigandet, Ortale, Kelley, Herbert & Crawford, Nashville, TN, for plaintiffs.

Douglas R. Johnson and Stephen R. Beckham, Chattanooga, TN; C. Douglas Williams, Stophel & Stophel, PC, Chattanooga, TN; James W. O'Mara, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee, John C. Cook, United States Bankruptcy Judge, approving the compromise and settlement of an adversary proceeding.

The parties to the adversary proceeding are Douglas R. Johnson, liquidating trustee for the debtor Media Central, Inc., and the official unsecured creditors committee of this debtor, as plaintiffs, and, as defendants, Jackson Family Television, Inc., and H. Bernard Dixon. The appellants are creditors of Media Central: Morton J. Kent, David J. Kent, Donald B. Kent, Stephen D. Kent, Martha D. Kent, J. Clifford Curley, and John F. Pauza.

Due to the complexity of the underlying transactions which resulted in the adversary proceeding which in turn resulted in the compromise and settlement which the appellants say the bankruptcy court should not have approved, it is appropriate to state the facts surrounding the underlying transactions in some detail. H. Bernard Dixon sold to Media Central the capital stock of Jackson Family Television, Inc. Media Central's debt for the purchase price of the Jackson Family Television stock was secured by a security interest in the stock in Mr. Dixon's favor.

Mr. Dixon and Jackson Family Television were general partners in Jackson Television, Ltd., a limited partnership. This limited partnership owned television station WDBD in Jackson, Mississippi.

Media Central became a voluntary debtor in bankruptcy. Jackson Television, Ltd., became an involuntary debtor, and an order for relief was entered in its case. Conflicting claims against these debtors' estates led to an April 1990 settlement agreement, which provided in part as follows. Media Central's claim against its fellow debtor, Jackson Television, Ltd., was reduced. Mr. Dixon's claim against Media Central was allowed. It was agreed that Jackson Television, Ltd. would be liquidated; in other words, that the television station in Jackson, Mississippi would be sold.

This settlement agreement also lifted the automatic stay in Media Central's case, to allow Mr. Dixon to foreclose his lien against the Jackson Family Television stock, for the purpose of liquidating the latter corporation. It can be seen that the effect of permitting this foreclosure combined with the liquidations of Jackson Family Television, Inc., and of Jackson Television, Ltd., would have been to pay to Mr. Dixon all of the net proceeds of the sale of the television station in Jackson, after the payment of creditors and satisfaction of the limited partnership interests in Jackson Television, Ltd.

The April 1990 settlement agreement modified this somewhat by requiring Jackson Television's disbursing agent to pay to Mr. Dixon $2,500,000.00 in settlement of his claims against the Media Central estate and against the Jackson Television limited part-

nership's estate, and in satisfaction of his partnership interest in Jackson Television, Ltd. In a provision which led to the dispute which led in turn to the compromise and settlement here under review, the bankruptcy court's order approving the April 1990 settlement agreement required Media Central to "make every effort to reduce the income tax consequences to Jackson Family Television, Inc., including the filing of a consolidated tax return."

A consideration behind this provision was that upon the profitable sale of the television station in Jackson, Mississippi, Jackson Television, Ltd., would realize a taxable gain, which would be "passed through" to the partners in this partnership, including Jackson Family Television, Inc. Media Central, on the other hand, had net operating losses from previous years which the parties contemplated would be available to be carried forward for income taxation purposes. The filing of a consolidated return by Media Central and its subsidiary, Jackson Family Television, Inc., would make the former's net operating losses available to reduce the latter's liability for income tax arising out of the gain on the sale of the television station.

In August 1990, the bankruptcy court below granted a joint motion for approval of this compromise and settlement. The order directed that funds remaining, after payment of claims and satisfaction of partnership interests, be paid over to Media Central's estate, for distribution to Media Central's creditors.

The litigation which has resulted in this appeal began after Media Central and Jackson Television filed a consolidated income tax return for the year ended March 31, 1990. The inclusion of the gain from the sale of the television station in Jackson, Mississippi caused Media Central to owe income taxes. The loss carry-forward available to be used was not sufficient to offset the gain. Had a consolidated return not been filed, Media Central would have had no income tax liability. Persons interested in Media Central's estate argued on this basis that the income tax liability rested ultimately not on Media Central, but on Jackson Family Television,

Inc., and therefore on Mr. Dixon, who, it will be recalled, had been permitted to acquire, by foreclosure of the security interest in his favor, Jackson Family Television's capital stock from Media Central as part of the settlement agreement approved by the bankruptcy court. Seeking to prevent Media Central from incurring any income tax liability, Media Central's trustee and its official unsecured creditors' committee commenced this adversary proceeding, in which they prayed in part for judgment in the amount of $221,886.00, for income and franchise taxes assessed against Media Central by the United States and the State of Mississippi.[1]

Mr. Dixon moved to dismiss this adversary proceeding, arguing that because he was, by way of foreclosure, the stockholder of Jackson Family Television, and because a stockholder is entitled upon liquidation only to the equity remaining after satisfaction of the corporation's debts, including taxes, the agreement which provided for the payment of $2,500,000.00 to him contemplated that Jackson Family Television's tax liability would be satisfied before the payment of money to him, and not out of his $2,500,000.00.[2] Mr. Dixon argued also that Media Central's liquidating trustee was charged by law with the duty to file a federal income tax return for this corporation, and that the trustee was therefore liable for any federal income taxes owed on the basis of the consolidated return. *See Holywell Corporation v. Smith,* 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992). Mr. Dixon also challenged the standing of the creditors committee.[3]

In a brief filed in the bankruptcy court below, Mr. Dixon argued that he had not entered into any oral agreement to pay any taxes shown to be owed on the consolidated return of Media Central and Jackson Family Television, and argued that proof of any such agreement would be barred by the parol evidence rule or by the Statute of Frauds[4]. Mr. Dixon also argued, on the basis of the settlement transaction itself, that it was clear that the parties' intention was that Media Central bear the tax liability, because "[i]n the absence of a consolidated income tax return, it is doubtful that there would have been any surplus for the Media [Central] creditors."

Attorney C. Douglas Williams, Media Central's bankruptcy counsel, at first supported Media Central's creditors' position. In an affidavit, Mr. Williams recalled that the agreement had been that "[Jackson] Family [Television], and Mr. Dixon as successor to [Jackson Family Television's] assets as sole shareholder, [would] pay the taxes if any were due after applying Media's loss carry-forward in the consolidated return...." According to this view, the settlement agreement was made to take advantage of Media Central's loss carry-forward, which otherwise might have been lost, or at least not available to reduce tax liability for another year. At least part of the consideration given for the use of Media Central's loss carry-forward, according to this view, was the agreement to limit Media Central's claim against Jackson Television, Ltd. Mr. Williams also stated in his affidavit that it was not the parties' intent that the written settlement agreement be a complete expression of their agreement, *i.e.,* that it address this issue of ultimate liability for taxes due.

The plaintiffs argued in response that Mr. Dixon would not have been concerned about minimizing Jackson Family Television's tax liability had he not agreed to pay it. The plaintiffs argued that the Statute of Frauds

1. The plaintiffs later amended their complaint to state a higher *ad damnum,* to reflect interest and penalties paid by Media Central's trustee to the taxing authorities.

2. It has also been argued in this adversary proceeding, however, that in the joint motion seeking approval of the April 1990 settlement agreement, the payment of proceeds from the liquidation of Jackson Family Television to Media Central was treated as a return on equity, and that Media Central, as the holder of an equity interest in Jackson Family Television, was therefore liable for the taxes shown to be owed on the consolidated return.

3. The other defendant named in this adversary proceeding, Jackson Family Television, Inc., defaulted. Having been completely liquidated, this corporation had nothing to gain by participating in this litigation.

4. Mr. Dixon conceded eventually that the Statute of Frauds does not apply in this case.

does not apply in this case, because there was no promise made to the obligees (the taxing authorities) to pay the debt of another, and also that Mr. Dixon had not pleaded the statute as an affirmative defense. They argued against any application of the parol evidence rule on the grounds that the agreement concerning liability for payment of any taxes due was collateral to the written settlement agreement; that the agreement concerning liability for any taxes due provided a consistent and additional term to the existing, written settlement agreement, which was not a complete and exclusive statement of what the parties had agreed to; and that the promise to pay any taxes due induced Media Central to enter into the settlement agreement. These arguments were supported by the affidavit of Donald B. Kent, Media Central's president.

While this adversary proceeding was pending before the bankruptcy court, however, Media Central's bankruptcy attorney, Mr. Williams, submitted a second affidavit, stating that his first had been based on information which had been incomplete and not fully explained to him. He contradicted the plaintiffs by stating that his understanding of the settlement transaction was that after the liquidation of *Jackson Television, Ltd.*, satisfaction of claims against it and payment of its expenses, and payments to redeem the limited partners' interests, the balance remaining would be paid to its general partner, Jackson Family Television, which would pay its own debts, including the tax debt arising from the gain on the sale of the partnership's asset, the radio station. Mr. Williams stated in his second affidavit that Mr. Dixon was interested in the provision concerning filing a consolidated return simply because the lower Jackson Family Television's tax liability, the more likely it was that Mr. Dixon would receive the $2,500,000.00 promised to him in the settlement agreement.

Mr. Dixon argued that he was also interested in Media Central and Jackson Family Television filing a consolidated tax return because he was an unsecured creditor of Media Central as a result of a transaction unrelated to the one which resulted in the adversary proceeding and settlement here

under review. By reducing Jackson Family Television's tax liability, the parties increased the likelihood that funds would be available to be paid by Jackson Family Television to Media Central pursuant to the parties' settlement agreement, thereby increasing Media Central's estate. The unsecured creditors committee disputed, however, that any such considerations would have motivated the defendant Mr. Dixon.

Mr. Dixon's counsel, Thomas E. Ray, denied that any promise made by Mr. Dixon to pay this tax liability was stated by Mr. Ray or by anyone, including Mr. Dixon, in Mr. Ray's presence.

With the parties in a posture to litigate these issues, Media Central's trustee proposed for approval by the bankruptcy court a settlement under which all claims would be settled in exchange for Mr. Dixon paying to Media Central's trustee $50,000.00, significantly less than the claim for the taxes, penalties, and interest paid by Media Central in excess of $300,000.00. The unsecured creditors committee objected, in part on the ground that a conflict of interest arising out of Media Central's attorney's law firm representing both Media Central and, in an unrelated matter, Mr. Dixon caused Mr. Williams to repudiate his earlier affidavit testimony.

 Bankruptcy Judge Cook heard the matter, and, in the order appealed from, approved this compromise and settlement. Judge Cook has himself stated well, in *In re Tennol Energy Company*, 127 B.R. 820 (Bankr.E.D.Tenn.1991), the rules which govern a bankruptcy court's consideration of a bankruptcy trustee's motion for approval of a proposed compromise and settlement. The bankruptcy court's authority in this regard is found in Bankr.R. 9019(a). The question asked must always be whether the proposed compromise and settlement is in the best interests of the estate.

The factors to consider are "the probabilities of ultimate success in litigation, the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting any judgment that might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Tennol Energy Company, supra,*

127 B.R. at 828 (citations omitted). In considering these factors, the bankruptcy court should canvass the issues and determine whether the proposed settlement falls within the range of reasonableness in the case, but without trying the case or otherwise deciding the issues of law and fact presented. *Id.* (citations omitted).

In considering whether to approve a proposed compromise and settlement, the bankruptcy court is not to substitute its judgment for the trustee's. *Tennol Energy Company, supra,* 127 B.R. at 828 (citations omitted). The trustee's judgment concerning the proposed compromise and settlement is entitled to some deference.

> The trustee is empowered to compromise causes of action belonging to the bankruptcy estate. While the trustee must give consideration to the debtors' interest in any surplus remaining after the payment of all debts, fees, and administrative expenses, see 11 U.S.C. § 726(a)(6), he must also protect the interests of unsecured creditors. Fully litigating a tort claim could easily exhaust assets that would otherwise go to creditors, and in the first instance the person vested with responsibility for deciding whether to settle or fight is the trustee, not the debtor.

*Bauer v. Commerce Union Bank, Clarksville, Tennessee,* 859 F.2d 438, 441 (6th Cir. 1988), *cert. denied, sub nom. Bauer v. Waldschmidt,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989).

In reviewing the bankruptcy court's determination concerning a compromise and settlement proposed by a trustee, this court considers findings of fact under the clearly erroneous standard of review, Bankr.R. 8013, and reviews conclusions of law *de novo,* but reviews the order approving the compromise and settlement only for abuse of discretion.

*Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1380 (9th Cir.1986) (citations omitted).

As the appellee, Media Central's trustee, pointed out in his brief, the appellants did not include in their brief any statement of this court's jurisdiction to hear this appeal.[5] The court finds that it does have jurisdiction of this appeal under 28 U.S.C. § 158(a), the bankruptcy court's order approving this compromise and settlement having been a final order for this purpose, and the appellants having complied with Bankr.R. 8001(a) within the time allowed by Bankr.R. 8002(a).

The court concludes that deference to the bankruptcy court's exercise of its discretion is appropriate in this case. It is doubtful that the plaintiffs in this adversary proceeding could have overcome the obstacle presented by the parol evidence rule to the admission of evidence concerning an oral agreement under which Mr. Dixon would pay any taxes shown to be due on Media Central's and Jackson Family Television's consolidated return. An independent, collateral agreement may be proved by parol evidence; the test for determining whether an agreement is independent and collateral for this purpose is whether the oral agreement, considering the parties' circumstances, the subject matter of the agreement, and the nature of the writing, would ordinarily have been included in the written agreement. *Early v. Street,* 192 Tenn. 463, 472, 241 S.W.2d 531, 535 (1951).[6] If the parties intended their written agreement to be the exclusive statement of their April 1990 settlement agreement, then the court may not allow the terms of the agreement to be supplemented by evidence of additional terms. *See Starnes v. First American National Bank of Jackson,* 723 S.W.2d 113, 118 (Tenn.Ct.App.), *permission to appeal denied, id.* (Tenn.1986).

---

5. The appellants' brief does not contain any citation to any authority on any point.

6. It appears that the parties to the adversary proceeding did not dispute that Tennessee law provided the parol evidence rule applicable in the adversary proceeding. In deciding the choice of law with respect to the parol evidence rule, it must be remembered that the rule is one of substantive law, not of evidence. *Compare Consumers Lease Network, Inc. v. Puckett (In re*

*Puckett),* 838 F.2d 471 (6th Cir.1988) (table), unpublished opinion available in WESTLAW at 1988 WL 7404, at **4. In any event, if the choice of law in the adversary proceeding should instead have been federal law or Mississippi law, for examples, no one has suggested that the parol evidence rule from another forum is substantially different from the rule as it is understood and applied in Tennessee.

Here, the parties resolved their differences arising out of complicated transactions by a lengthy writing, negotiated and drafted by attorneys. The amounts in issue were large, such that if Media Central's permitted loss carry-forward were not sufficient, a sizeable tax liability would arise from the gain realized on the sale of the Jackson, Mississippi television station. Existing revenue law indicated the Internal Revenue Service's view of which party or parties bore liability for taxes owed in cases involving consolidated returns, and so provided a context in which this settlement agreement was drafted.

There is enough in this record to indicate that the persons interested in this adversary proceeding and in the compromise and settlement of it were businesspeople of greater than average sophistication. Furthermore, a court could find on the basis of evidence in this record, and specifically on the basis of correspondence among counsel at the time of the April 1990 settlement agreement, that the parties considered their settlement agreement to be comprehensive.

Given these factors, it would not be surprising if a court concluded that any agreement under which Mr. Dixon would pay the taxes shown to be owing on the consolidated return filed by Media Central and Jackson Family Television would have been reduced to writing and included in the written settlement agreement, if for no other reason than to provide written evidence to taxing authorities of this assumption of tax liability. The bankruptcy court therefore concluded correctly that the plaintiff trustee faced a great risk of no recovery in this adversary proceeding.

Not only did the plaintiff trustee recommend approval of this compromise and settlement, a strong consideration in itself, but the bankruptcy court was also confronted with the conflicting affidavits filed by bankruptcy counsel for Media Central, which showed that it was far more likely than not that this attorney would testify in favor of Mr. Dixon.[7] The bulk of the record on appeal in this case, in which the issue is limited to whether approval of the compromise and settlement was proper, indicates that the likely complexity and duration of a trial of the entire adversary proceeding, and the expense of taking it to trial, argued in favor of the compromise and settlement proposed by the plaintiff trustee and Mr. Dixon.

Finally, the court cannot say that the bankruptcy court was clearly erroneous or abused its discretion in finding that the settlement amount of $50,000.00 in this case is within the range of reasonableness, considering all of the relevant facts and circumstances. For the reasons stated, the court will affirm the bankruptcy court's order approving the compromise and settlement proposed by the plaintiff trustee.

### ORDER

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, it is ORDERED that the order entered in this adversary proceeding by the United States Bankruptcy Court for the Eastern District of Tennessee, approving the compromise and settlement of this adversary proceeding by the payment of $50,000.00 by the defendant H. Bernard Dixon to the plaintiff trustee, is **AFFIRMED,** under Bankr.R. 8013.

---

7. The appellants have made serious allegations in this case concerning Media Central's bankruptcy attorney's possible conflict of interest arising out of his law firm's representation of Mr. Dixon with respect to other, unrelated taxation issues. The appellants presented no evidence, however, to show that an actual conflict of interest tainted the compromise and settlement under review here. Furthermore, because the plaintiff trustee proposed approval of this compromise and settlement, the court must presume that the trustee subjected it to his independent review and analysis. The second affidavit made by bankruptcy counsel for Media Central must therefore remain a factor in favor of approval of the compromise and settlement of this adversary proceeding.

The court's ruling in this regard should not be understood as an expression of any opinion concerning the existence of a conflict of interest, an issue better left to an appropriate forum or agency having jurisdiction over questions of professional responsibility.