## In re WEST POINTE PROPERTIES, L.P., Debtor.

### No. 99–32193.

United States Bankruptcy Court, E.D. Tennessee.

May 22, 2000.

---

Bailey, Roberts & Bailey, P.L.L.C., N. David Roberts, Jr., Robert M. Bailey, Knoxville, TN, for the trustee.

John P. Newton, Jr., Knoxville, TN, for the Debtor.

Kennerly, Montgomery & Finley, P.C., Craig J. Donaldson, Robert H. Green, Knoxville, TN, for J. Hicks Excavating, Inc. and United States Fidelity & Guaranty Company.

Charmaine M. Nichols, Sevierville, TN, for Ronald C. Frye and West Pointe Development, Inc.

Gilreath & Associates, Bryan L. Capps, Meridith C. Bond, Knoxville, TN, for Don Bayless Heating and Air.

Michael Luethke, Luethke Surveying Company, Knoxville, TN, Pro Se.

Long, Ragsdale & Waters, P.C., Diana M. Thibodaux, Knoxville, TN, for Fort Loudon Contractors, Inc.

Ellen B. Vergos, United States Trustee, Region 8, Patricia C. Foster, Knoxville, TN, for the United States Trustee.

## MEMORANDUM ON MOTION TO COMPROMISE CLAIMS

RICHARD S. STAIR, Jr., Chief Judge.

The court has before it a Motion to Compromise Claims and Notice of Hearing (Motion) filed by the Chapter 7 Trustee, N. David Roberts, Jr., on March 28, 2000. Don Bayless Heating and Air and Luethke Surveying Company filed objections to the Motion on April 26, 2000. An initial hearing was held on April 27, 2000, at which time the court fixed a briefing schedule and set a trial date. Another objection was filed after the hearing by West Pointe Development, Inc. and Ronald C. Frye on May 2, 2000. Briefs in support of the Trustee's Motion have been filed by J. Hicks Excavating, Inc. and the Trustee. Briefs in opposition to the Motion were filed by Don Bayless Heating and Air and by Ronald C. Frye, together with West Pointe Development, Inc. An evidentiary hearing was held May 9, 2000.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West 1993).

### I

The Debtor is a limited partnership. West Pointe Development, Inc. is the Debtor's general partner, and its president, Ronald C. Frye, managed the Debtor. When the Debtor filed its Voluntary Petition under Chapter 11 on May 26, 1999, its primary asset consisted of approximately thirty-four acres located in Knox County, Tennessee, at 8500 Oak Ridge Highway which it acquired for the purpose of constructing and developing a mobile home park. The land secured an obligation of the Debtor to Continental Wingate Associates, Inc. pursuant to the terms of a Deed of Trust Note and Deed of Trust both dated August 7, 1996. The United States Department of Housing and Urban Development (HUD) insured the obligation.[1]

The litigation that the Trustee wishes to compromise arises out of the cessation of work on the Debtor's property in 1997, the subsequent declaration that the Debtor had defaulted under the terms of its obligation to Continental Wingate Associates, Inc., the January 13, 1998 assignment of Continental Wingate Associates, Inc.'s rights under the August 7, 1996 Deed of Trust Note and Deed of Trust to HUD, and the Debtor's contention that J. Hicks Excavating, Inc., the general contractor for the development, was the party in default.

HUD sought to foreclose its interest in the property after the Debtor filed its Chapter 11 petition. On December 9, 1999, after a contested hearing, the court entered an Order granting the Motion to Dismiss or, in the Alternative, Motion to Abandon Property and Modify Automatic Stay filed by HUD on September 30, 1999. By this Order, the court converted the Debtor's Chapter 11 case to Chapter 7, modified the automatic stay to permit HUD to foreclose its interest in the land pursuant to the August 7, 1996 Deed of Trust, and directed abandonment of the property as a burdensome asset of the estate. At the May 9, 2000 hearing on the Trustee's Motion, the Trustee testified that HUD has now foreclosed on the property.[2]

---

1. The court takes judicial notice from prior litigation involving the Debtor and HUD that the original principal amount of the Debtor's obligation to Continental Wingate Associates, Inc. was $2,222,900.00. See Fed.R.Evid. 201.

2. The court's December 9, 1999 Order is before the Honorable Leon Jordan, United States District Judge, on an appeal brought by the Debtor. Judge Jordan denied the Debtor's motion for a stay pending appeal on April 17, 2000. Thereafter, a motion was filed on behalf of the Debtor and Heath W. Frye, Ronald C. Frye's son, in the district court seeking a restraining order, temporary injunction, and permanent injunction enjoining HUD's foreclosure of the property. That mo-

Following the conversion to Chapter 7, N. David Roberts, Jr. was appointed trustee of the Debtor's estate. The Trustee received, as property of the estate, two lawsuits in which the Debtor is a party. The lawsuits are the Debtor's only remaining assets. At issue here is the estate's interest in a suit filed by Fort Loudon Contractors, Inc. against J. Hicks Excavating, Inc., United States Fidelity & Guaranty Company (USF & G), and the Debtor arising out of a contract encompassing the improvements to the Debtor's Oak Ridge Highway property. The Debtor asserts a cross-claim against J. Hicks Excavating, Inc. as principal and a third-party claim against USF & G as surety, seeking to compel payment of a performance bond as a result of J. Hicks Excavating, Inc.'s alleged breach of the contract. This action was commenced in the Chancery Court for Knox County, Tennessee, on February 24, 1998, and was assigned Adversary Proceeding No. 99–3158 upon its removal to the bankruptcy court on August 24, 1999. The Debtor seeks a judgment on its cross-claim and third-party claim of $1,653,-540.00, the maximum amount of the bond.

Also pending before this court is Adversary Proceeding No. 99–3193 which the Debtor brought against Continental Wingate Associates, Inc. and HUD. The Debtor seeks recovery for the alleged improper acceleration of its debt based on misrepresentations by HUD and Continental Wingate Associates, Inc. that the Debtor was in default. Underlying both actions is the Debtor's assertion that J. Hicks Excavating, Inc. was the party who was actually in default. The Debtor maintains that it was never in default.

At the May 9, 2000 evidentiary hearing on the Trustee's Motion, the Trustee testified that he arranged to meet with Ronald C. Frye and the Debtor's attorney, John P. Newton, Jr., after the January 18, 2000 meeting of creditors; that he also arranged to meet with Craig Donaldson and Robert H. Green, counsel for J. Hicks Excavating, Inc. and USF & G; that the meeting with Mr. Donaldson and Mr. Green occurred first, on February 8, 2000; that J. Hicks Excavating, Inc. and USF & G offered to settle the bond litigation for $25,000.00, which was represented to be the estimated cost of defending the action; and that he was requested to accept the offer before a March 30, 2000 pre-trial conference in the adversary proceeding.

The Trustee met with Mr. Frye and Mr. Newton on February 17, 2000. He testified that he presented them with the $25,000.00 settlement offer at the meeting and that he explained that there were three possibilities to consider: settling the matter, retaining counsel to pursue the litigation on a contingency fee basis, or finding another offer to compete with the settlement offer. The Trustee testified that he knew that the Debtor, through Mr. Frye, had employed William F. Shumate to investigate the matter prior to the commencement of the Chapter 11 case, but that Mr. Shumate had declined to represent the Debtor in litigation; that he knew that Mr. Frye[3] had employed the law firm of Stone & Hinds in the matter, but that Mr. Frye discharged them for a reason not specified at trial; and that he believes that Stone & Hinds would not represent the Debtor on a contingency basis and that, on a personal level, there is tension between himself and a member of that firm, stemming from his prior representation of the member's former wife. Although Mr. Newton was considered as possible counsel, he continues to represent the Debtor in its appeal of this court's December 9, 1999 conversion Order and has filed a motion to withdraw as counsel in the two adversary proceedings.

tion, after a hearing by the Honorable James H. Jarvis, was denied on May 2, 2000, *nunc pro tunc* to April 26, 2000, for the reasons set forth in a Memorandum Opinion filed the same date by Judge Jarvis.

**3.** References to Ronald C. Frye are deemed references to the Debtor because Mr. Frye was the representative of the Debtor acting on its behalf.

The Trustee testified that he attempted to discuss the employment of counsel with Mr. Frye at the February 17, 2000 meeting; that Mr. Frye would not identify the attorneys under his consideration; that Mr. Frye refused to include him in meetings with potential counsel; that he informed Mr. Frye that he would have to respond to the settlement offer before the March 30, 2000 pre-trial hearing; and that Mr. Frye was generally hostile and uncooperative at the meeting.

Mr. Frye testified at the May 9, 2000 hearing that he had first retained Mr. Shumate, who represented the Debtor until early 1999; that he hired Stone & Hinds in March 1999; that the Stone & Hinds employment did not work out; and that he hired Mr. Newton in May 1999 to pursue the adversary proceedings and to file the Debtor's Chapter 11 case. He testified that he gave the Trustee his phone number so that they could discuss the adversary proceedings but that he received no contact from the Trustee until February 10, 2000, when Mr. Newton contacted him to relay the news that the Trustee had received a settlement offer from J. Hicks Excavating, Inc. and USF & G. Mr. Frye testified that he asked Mr. Newton to arrange a meeting with the Trustee; that they met on February 17, 2000; that Mr. Frye explained the chronology of the facts involved in the adversary proceedings to him; that he believed that the Trustee had not investigated the adversary proceedings other than by contacting USF & G, Mr. Shumate, and another potential counsel, Maurice Guinn; that Mr. Frye felt that he could not confide in the Trustee regarding his search for counsel to handle the adversary proceedings; that he did not understand that he could bid against the $25,000.00 settlement offer; and that the Trustee told him that he had until the end of March to find counsel.

The evidence established that there was a communication breakdown between the Trustee, Mr. Newton, and Mr. Frye beginning in February 2000. Mr. Frye testified that he attempted to contact the Trustee directly, but that he now understands that the Trustee was required to contact him through Mr. Newton. The Trustee testified that he contacted Mr. Newton frequently, in person and by letter, regarding Mr. Frye's progress in finding counsel and that Mr. Newton was having difficulty contacting Mr. Frye.

The Trustee testified that he discussed representation of the estate's interest in the adversary proceedings with attorneys William F. Shumate, Maurice Guinn, Robert M. Bailey, and John Walker, Jr., but that none of them were willing to accept employment. Although he did not specify Mr. Bailey's reason for declining employment, he testified that Mr. Shumate declined because of the time and expense required by the litigation, Mr. Guinn declined because he could not work on a contingency fee basis, and Mr. Walker declined after learning that Mr. Frye was involved. Meanwhile, Mr. Frye contacted Gilreath & Associates and asked that firm to represent the Debtor.

As of March 27, 2000, a few days before the pre-trial conference scheduled in the adversary proceeding, the Trustee had not located an attorney and Mr. Newton had not told him whether Mr. Frye had located an attorney who was willing to represent the estate. That afternoon, the Trustee called Mr. Donaldson to propose a counter-offer under which the Trustee would accept the $25,000.00 settlement if J. Hicks Excavating, Inc. and USF & G would waive all claims against the estate. That waiver specifically included the $268,695.35 claim filed by J. Hicks Excavating, Inc., which is the largest unsecured claim in the Debtor's case. Mr. Donaldson contacted the Trustee the next day to accept the offer.

The Trustee filed the present Motion on March 28, 2000. Therein, the Trustee served creditors and parties in interest with notice that a hearing on the Motion

would be held on April 27, 2000,[4] and that "[o]bjections to the proposed settlement must be in writing, filed with the Court and served on the Trustee prior to the hearing. Objections not timely filed may be deemed waived by the Court."

The Trustee testified that later that day he received a letter from attorney Sidney Gilreath of Gilreath & Associates in which Mr. Gilreath advised the Trustee that after discussing the Debtor's claims with Mr. Frye his firm was willing to represent the Debtor and its bankruptcy estate on a contingency fee basis in the actions involving J. Hicks Excavating, Inc., USF & G, Continental Wingate Associates, Inc., and HUD. The Trustee explained that he did not respond to the letter because he had already agreed to the $25,000.00 settlement. He testified that he did not hear from Mr. Gilreath again until he received notice of an action filed against him in district court by Gilreath & Associates on behalf of the Debtor and Heath W. Frye, the son of Ronald C. Frye and a limited partner of the Debtor. By that action, which has been dismissed, the Debtor and Heath W. Frye sought a restraining order and injunction to prevent HUD's foreclosure sale of the Debtor's property and the compromise at issue here.[5]

The deadline for filing claims in the Debtor's Chapter 7 case expired on April 17, 2000. Twelve claims were filed.[6] HUD filed the largest claim, which is in the amount of $1,146,642.93. Pursuant to

an Order entered on April 28, 2000, HUD's claim, which is a non-recourse secured claim, will be allowed to the extent that it is secured and disallowed for purposes of dividend distribution to general unsecured creditors. J. Hicks Excavating, Inc. filed the second largest claim in the amount of $268,695.35. That claim would be withdrawn under the compromise that is the subject of the instant Motion. Fort Loudon Contractors, Inc. filed the third largest claim in the amount of $51,755.34. Although Fort Loudon Contractors, Inc. filed a Response to Motion to Compromise Claims objecting to the settlement on April 26, 2000, it filed a Motion to Withdraw Objection to Motion to Compromise Claims on May 2, 2000, and the court granted that motion in an order entered on May 3, 2000. The remaining claims total $18,325.94.[7] None of the general unsecured creditors who have filed claims object to the compromise.

The Trustee testified that his statutory commission will be $3,250.00 if the court approves the compromise and that the net settlement could yield a 30.79% dividend to the general unsecured creditors that have filed claims. The Trustee has not determined the total of other administrative expenses that will be owing. On May 5, 2000, Mr. Newton filed a final application for fees for his work on behalf of the Debtor. He asks the court to approve $16,875.00 in fees and $1,487.28 in expenses.[8]

---

4. The notice mistakenly stated the hearing date as April 27, 1999.

5. *See supra* n. 2.

6. In actuality, ten claims were filed because two are duplicates.

7. One of those claims is a $250.00 priority claim filed by the United States Trustee. The claim of Fort Loudon Contractors, Inc., was originally filed as secured. However, an agreed order was entered on May 4, 2000, allowing that claim as a general unsecured claim.

8. The Trustee testified that he plans to object to Mr. Newton's fee application. Nonethe-

less, the Trustee's conclusion that approval of the proposed compromise could net a 30.79% dividend to general unsecured creditors is questionable in light of Mr. Newton's application. Mr. Newton has performed considerable work for this Debtor, much of which has been in the form of litigation. Additionally, by an Order Authorizing Employment of Attorneys entered on May 2, 2000, the court authorized the Trustee to employ the law firm of Bailey, Roberts & Bailey, P.L.L.C., to serve as his attorneys. This firm represented the Trustee at the May 9, 2000 hearing on the Trustee's Motion and will presumably request compensation for those as well as other services it might render.

The court scheduled the initial hearing on the Trustee's Motion for April 27, 2000. On the day before the hearing, there were two objections filed, one by Don Bayless Heating and Air and the other by Luethke Surveying Company. Gilreath & Associates filed the objection on behalf of Don Bayless Heating and Air and Luethke Surveying Company, a sole proprietorship, is acting *pro se* through its owner, Michael Luethke.[9] Although the Debtor scheduled Don Bayless Heating and Air and Luethke Surveying Company as creditors, neither filed a claim. The main contention of these two objections is that the amount of the settlement is inadequate.

On May 2, 2000, Mr. Frye and West Pointe Development, Inc. filed an objection to the settlement. Mr. Frye testified that he did not file a timely objection because Mr. Newton informed him that he lacked standing to do so. Attached to the objection is an April 12, 2000 letter from Mr. Newton to Mr. Frye in which Mr. Newton states, in material part: [10]

> As we previously discussed, you or a non Debtor entity can attempt to bid against USF & G on the settlement of that case but that would need to be written and filed prior to the April 27 hearing on the motion to approve the compromise. The Debtor itself cannot object to the compromise since the Trustee controls the Debtor's rights in a Chapter 7 case. If you have questions, please contact me. I am required to mail things to your post office address because we no longer have a current fax number for you.

Mr. Frye asserts that he is objecting as president of West Pointe Development, Inc. based on its interest in the equity generated by disposition of the Debtor's assets. He contends that the settlement amount is grossly inadequate and that the Trustee has failed in his duty to investigate the Debtor's claims in the adversary proceeding.

Finally, the May 9, 2000 hearing included testimony about the litigation itself. The evidence established that the litigation would involve the depositions of numerous witnesses, the employment of experts, and that the parties sharply dispute the issues involved. Attorney William F. Shumate testified about his knowledge of the Debtor's claim based on his representation of the Debtor in the matter in early 1999. Mr. Shumate has practiced law in the Knoxville, Tennessee area for thirty-four years. His firm consists of three attorneys and his practice involves primarily real estate, construction, and commercial law. Mr. Shumate testified that Mr. Frye provided him with documents, contracts and other items for review; that it appeared to him that HUD had not treated the Debtor properly; that he had met with an architect and several representatives of HUD in Atlanta, Georgia; and that he had sent a March 2, 1999 demand letter to USF & G. He explained that Mr. Frye had employed another attorney to research the legal issues and that he had used the product of that research in his demand letter to USF & G. Mr. Shumate testified that he remembered that the value of the claim, which could include attorney fees, costs, and possibly punitive damages, "certainly equaled or exceeded the amount of the bond being carried by … USF & G" and that he knows of no justification for USF & G's refusal to honor its performance bond.

During cross-examination of Mr. Shumate by Robert M. Bailey, the Trustee's attorney, Mr. Shumate explained his decision to discontinue his prepetition representation of the Debtor:

---

9. Mr. Luethke did not appear or otherwise participate in the April 27, 2000 hearing or in the May 9, 2000 final hearing.

10. This letter was not introduced into evidence at the May 9, 2000 hearing, but will nonetheless be considered by the court because it is relied on by Mr. Frye and West Pointe Development, Inc. to justify their failure to file a timely objection to the Trustee's Motion.

Q. Well, I guess what I'm asking is why did you think it was expensive? Why was the litigation going to be expensive and why did you not think your firm had the financial wherewithal to handle the case?

A. Principally because we're a small firm. We do not have a lot of support staff and it would have taken so much of my time and probably at least one of the other lawyers in the firm's time that coming out the other end of the litigation we would have no law practice.

Q. Okay. And I take it you still thought that there was concern as to whether you would be ultimately successful, whether you would win enough money back to compensate for your time lost?

A. Well, that's always a concern. For anybody that's been at it as long as I have, you know that there are no sure things.

Q. All right. Is that why case—

A. But that really was not my concern. I thought it was a good lawsuit. I just couldn't get from here to there.

Q. Okay. But you were—even though thinking it was a good lawsuit, you were not willing to take it on a contingency basis?

A. I thought—that's right, because I thought it would be too long and drawn out for us to be able to afford to do that.

Mr. Shumate also testified about his working relationship with Mr. Frye during redirect examination by Ms. Nichols, attorney for West Pointe Development, Inc.:

Q. Okay. And, finally, let me ask you about your opinion in terms of Mr. Frye and his character and style of working with you. Did you ever find him to be uncooperative or unreasonable to work with?

. . .

A. Quite the contrary. Mr. Frye provided me with detailed memoranda, chronologies, summaries of events, copies of correspondence and other documents. We met frequently in person and spoke by telephone. And, no.

Q. Was he responsive to your—if you asked him to call or show up for a meeting, was he always responsive?

A. Always.

## II

■■■ The compromise of a claim between a debtor and its creditors must be approved by the court as "fair and equitable." *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988). "The court is not permitted to act as a mere rubber stamp or to rely on the trustee's word that the compromise is reasonable." *Id.* at 473. Rather, the court possesses "an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." *Id.* At the same time, the judgment of the trustee deserves some deference. *See Johnson v. Jackson Family Television, Inc. (In re Media Cent., Inc.)*, 190 B.R. 316, 321 (E.D.Tenn.1994); *In re Edwards*, 228 B.R. 552, 569 (Bankr.E.D.Pa. 1998).

■■■ The bankruptcy court need not try the case or make determinations regarding the legal and factual issues involved in the matter to be settled. *See Media Cent., Inc.*, 190 B.R. at 321; *Edwards*, 228 B.R. at 569. Instead, the court should consider the following factors: " 'the probabilities of ultimate success in litigation, the complexity, expense and likely duration of such litigation, the possible difficulties in collecting any judgment that might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' " *See Media Cent., Inc.*, 190 B.R. at 320 (quoting *In re Tennol Energy Co.*, 127 B.R. 820, 828 (Bankr.E.D.Tenn.1991)). The First Circuit has used similar factors:

(1) the probability of success were the claim to be litigated—given the legal and evidentiary obstacles and the ex-

pense, inconvenience and delay entailed in its litigation—measured against the more definitive, concrete and immediate benefits attending the proposed settlement (so-called "best interests" standard); (2) a reasonable accommodation of the creditors' views regarding the proposed settlement; and (3) the experience and competence of the fiduciary proposing the settlement.

*Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.),* 136 F.3d 45, 50 (1st Cir.1998) (citation omitted).

Finally, creditors may object to a proposed compromise and are entitled to receive at least twenty days notice of the hearing on approval of a compromise, with limited exceptions not relevant here. *See* Fed.R.Bankr.P.2002(a)(3). The notice requirement "provide[s] parties with a pecuniary interest in the settlement an opportunity to object to a settlement agreement that is unsatisfactory." *Triple E Transp., Inc. v. Caterpillar, Inc. (In re Triple E Transp., Inc.),* 169 B.R. 368, 373 (E.D.La. 1994) (citing *In re Masters, Inc.,* 149 B.R. 289, 293 (E.D.N.Y.1992)). The court may consider the opposition of "creditors of the estate," however, such objection "is not controlling and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly." *Official Creditors Comm. v. Beverly Almont Co. (In re General Store of Beverly Hills),* 11 B.R. 539, 541 (9th Cir. BAP 1981); *see also In re Goldstein,* 131 B.R. 367, 369 (Bankr.S.D.Ohio 1991). Ultimately, "[i]t is well accepted that compromises are favored in bankruptcy in order to minimize the cost of litigation to the estate and expedite its administration, and that the approval of a compromise is within the sound discretion of the bankruptcy judge." *Edwards,* 228 B.R. at 568–69.

### III

Don Bayless Heating and Air and Luethke Surveying Company, neither of whom has filed a claim, ground their objections on their assertion that the Trustee is failing in his duty to maximize the estate for the benefit of creditors by supporting an inadequate settlement. They are correct that the Trustee has a duty to maximize the estate for the benefit of creditors. *See Edwards,* 228 B.R. at 571. They, however, are not among the creditors to whom the Trustee owes that duty in making a settlement. In reaching a compromise of an estate's claim, the "Chapter 7 Trustee has the duty to preserve the assets for the benefit of creditors *who will share in distribution of the estate....*" *See id.* (emphasis added); *see also Triple E. Transp., Inc.,* 169 B.R. at 373 (explaining that the notice requirement provides parties with a pecuniary interest in the settlement with an opportunity to object). Traditionally, when ruling on matters affecting the distribution of the estate, courts have refused to consider the objections of parties whose claims against the debtor have not been filed or approved. *See, e.g., In re Clark,* 35 F.Supp. 722, 724 (N.D.Ga.1940) ("[A]s the [creditor] is not permitted to participate in the present anticipated distribution of the bankrupt's estate it is not in a position to complain of any order relating to the manner and extent of payments to creditors who have filed proofs of claim, none of whom attack the order of the Referee."); *In re Towers Magazines, Inc.,* 27 F.Supp. 693, 694 (M.D.Pa.1939) (explaining that a creditor had "expressed his disapproval of the agreement, but as the claim of [the creditor] had never been filed or approved, of course, his disapproval could not be taken into consideration"). Accordingly, the court will not consider their objections to the compromise.

Mr. Frye and West Pointe Development, Inc. filed an objection to the compromise on May 2, 2000, after the April 27, 2000 initial hearing. The notice of the hearing clearly stated that all objections must have been filed prior to the hearing. Mr. Frye asserts that he did not file an objection before the hearing because attorney John Newton advised him

in an April 12, 2000 letter that he did not have standing to do so. To the contrary, Mr. Newton's letter informed Mr. Frye that the "Debtor itself cannot object to the compromise since the Trustee controls the Debtor's rights in a Chapter 7 case." Mr. Newton also informed Mr. Frye that he and entities other than the Debtor could bid against the settlement offered by J. Hicks Excavating, Inc. and USF & G. Finally, Mr. Newton encouraged Mr. Frye to contact him if he needed further explanation of the contents of the letter. Mr. Newton's letter did not advise Mr. Frye that he lacked standing to object to the compromise and does not provide a meritorious excuse for the late filing. Mr. Frye's objection was not timely filed and is considered waived. Nonetheless, the bases for Mr. Frye's objection, that the compromise is not in the best interests of creditors and that the Debtor is likely to succeed in the litigation, will be considered by the court independently of his objection as they are factors for analysis in the court's determination of whether the compromise is fair and equitable.

## IV

■ The factors used in *Media Central, Inc.* for determining whether to approve a compromise revolve around the litigation itself. Specifically, those factors include the likelihood of success on the merits, the complexity, expense and duration anticipated for the litigation, and the ease with which a judgment could be collected. *See Media Cent., Inc.*, 190 B.R. at 320. The *Healthco International, Inc.* factors include those considerations measured against the benefits of the proposed settlement, as well as the views of the creditors, and the competence and experience of the trustee. *See In re Healthco Int'l, Inc.*, 136 F.3d at 50.

In the present matter, the Trustee asserts that he has served in that capacity since 1989 and that no creditor who stands to share in the distribution of the Debtor's

estate objects to the compromise. In addition, the Trustee expects that the proceeds of the settlement would provide a dividend of 30.79% for general unsecured creditors, but acknowledges that the dividend would be decreased by administrative expenses that remain owing from the Debtor's Chapter 11 case, from which this Chapter 7 was converted.[11] He believes that the settlement amount exceeds the costs of litigating the matter. Further, he argues that the compromise would benefit the estate by relieving it of the $268,695.35 claim filed by J. Hicks Excavating, Inc., which would be withdrawn.

■ While none of the general unsecured creditors who have filed claims objects to the compromise, the court is not bound by their acquiescence. *See Edwards*, 228 B.R. at 568–69 (The approval of a compromise is in the sound discretion of the court.). The court is troubled by the possibility that the settlement proceeds of $25,000.00 may be reduced not only by the Trustee's compensation but also by other administrative expenses including attorney's fees and expenses allowed Mr. Newton for services rendered the Debtor while it was operating under Chapter 11 and for attorney's fees and expenses attributable to services rendered the Trustee by his attorneys, Bailey, Roberts & Bailey, P.L.L.C. In fact, the court believes it more realistic to conclude that nonpriority unsecured creditors would benefit negligibly, if at all, from the Trustee's settlement for what amounts to the "nuisance" value of the Debtor's claim against J. Hicks Excavating, Inc. and USF & G.

The court must now assess the Debtor's probability of success in the litigation. In doing so it credits the testimony of William F. Shumate and relies upon his testimony that the Debtor's claim is meritorious.

The Trustee cites three obstacles to success in the litigation of the Debtor's claims. First, the Trustee argues that the

11. *See supra* n. 8.

resources of the Defendant USF & G greatly outweigh those of the estate and that USF & G has the ability to engage in lengthy and costly litigation. Although this is a concern, it is not necessarily a concern of the Trustee. Gilreath & Associates appreciates the expense and duration anticipated for the litigation and is willing to represent the Trustee on a contingency fee basis.

Second, the Trustee argues that he has been unable to find counsel to represent him after consulting multiple attorneys. Mr. Frye has found one candidate, Gilreath & Associates. Gilreath & Associates, the Trustee argues, is not an acceptable choice based on the adversarial position that Mr. Gilreath has taken against the Trustee by naming him as a defendant in the district court proceeding. The Trustee doubts that he and Mr. Gilreath would have a beneficial attorney-client working relationship. He also contends that the representation would present conflicts of interest that he would not be able to waive. In addition, the Trustee points out that Gilreath & Associates did not obtain this court's permission before filing its motion in district court on behalf of the Debtor and against the Trustee.

Third, the Trustee doubts success in the litigation because the relationship between him and the principals of the Debtor is not cordial. He asserts that the principals would be essential witnesses in the litigation and is troubled by the lack of cooperation and support that he anticipates from them.

These latter arguments are based primarily on the Trustee's problematic relationships with Mr. Frye and Gilreath & Associates. The court is not convinced, however, that these problematic relationships must preclude the Debtor from having its day in court, prevent the unsecured creditors from receiving any distribution made available by the successful prosecution of the Debtor's claim, and dispossess the Debtor and its equity security holders of the possibility of receiving a surplus.

## V

 The employment of Gilreath & Associates in the adversary proceedings would be governed by 11 U.S.C.A. § 327(e) (West 1993). Subsection 327(e) permits the trustee to employ a professional for a special purpose and sets forth the requirements for approving the professional, providing that

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C.A. § 327(e). By its terms, § 327(e) places three conditions on the attorney's employment. *See Buckley v. TransAmerica Inv. Corp. (In re Southern Kitchens, Inc.)*, 216 B.R. 819, 826 (Bankr. D.Minn.1998). First, the employment must be for a specified special purpose and not for the general management of the debtor's bankruptcy. *See id.* at 826 n. 13. Second, the employment must be in the best interests of the estate, meaning that pursuit of the claim is justified by its merit and value and that the proposed attorney has expertise and familiarity with the claim. *See id.* Third, the attorney to be employed must not "represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C.A. § 327(e); *Southern Kitchens*, 216 B.R. at 826. The third requirement "prevents the employment of special counsel who, on any matter of substance, represent or have represented a client that is an actual or potential opponent of the estate in the dispute for which counsel would be engaged." *Id.*

 In the absence of a definition of "interest adverse to the debtor or to the estate" in the Bankruptcy Code, the following definition has been recognized by courts:

"(1) to possess ... an economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate."

*Bank Brussels Lambert v. Coan (In re AroChem Corp.),* 176 F.3d 610, 623 (2d Cir.1999) (quoting *In re Roberts,* 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds,* (75 B.R. 402 (D.Utah 1987))); *In re Fretter, Inc.,* 219 B.R. 769, 777 (Bankr.N.D.Ohio 1998); *Southern Kitchens,* 216 B.R. at 826. Whether an attorney possesses an adverse interest is an issue of fact. *See AroChem,* 176 F.3d at 621; *Statewide Pools,* 79 B.R. at 314. There is no bright line for identifying an adverse interest; the circumstances of each case must be evaluated "based on a common-sense divination of adversity or commonality." *Southern Kitchens,* 216 B.R. at 827; *Fretter,* 219 B.R. at 778.

At this time, the court has no reason to believe that employment of Gilreath & Associates would be impermissible under § 327(e). If Gilreath & Associates is employed, that employment will be for the special and limited purpose of pursuing the Debtor's claims. Mr. Shumate's testimony satisfies the court that rejection of the proposed compromise is in the best interests of the estate and that it will be in the best interests of the estate to litigate the claims unless a fair and equitable settlement is reached. Finally, the present record does not suggest any interest held by Gilreath & Associates that is adverse to the estate's interest with respect to litigation of the claims. While it is true that Gilreath & Associates represented Don Bayless Heating and Air in its objection in

this matter and brought an action on behalf of the Debtor and Heath Frye against the Trustee in district court, those representations do not prevent employment of the firm for a special purpose under § 327(e). Certainly, by those actions, the firm has had two false starts in the bankruptcy realm. The objection of Don Bayless Heating and Air was not considered because that entity did not have standing to object to a compromise in which it had no interest. The firm's more serious misstep was in bringing an action on behalf of the Debtor, bringing an action against the Trustee, and seeking, in effect, to bypass the procedures of compromise approval set out in Fed.R.Bankr.P. 9019. While these actions may denote a lack of familiarity with bankruptcy practice, they do not indicate that Gilreath & Associates has an interest adverse to the estate in the litigation of the Debtor's claims against J. Hicks Excavating, Inc. and USF & G. To the contrary, Gilreath & Associates has represented parties who sought to enable the Debtor to litigate those claims.

## VI

If the Trustee decides not to go forward with the litigation because of his relationships with Gilreath & Associates or Mr. Frye, that decision will not necessarily forestall the litigation. One possible solution would be for the Debtor's general partner, West Point Development, Inc., to seek the court's permission to prosecute the Debtor's action in the name of the Trustee.

 The Seventh Circuit has explained the necessity for such permission and the circumstances under which a court may grant it:

Section 704(1) authorizes and obligates the *trustee* to collect and reduce to money the property of the estate for which such trustee serves. 11 U.S.C. § 704(1). *See also* 11 U.S.C. § 323 (the trustee is the representative of the estate and has the capacity to sue and be sued). The authority to

collect the debtor's assets is vested exclusively in the trustee. A trustee may be divested of this exclusive authority only in narrow circumstances. When (a) the trustee unjustifiably refuses a demand to pursue the action; (b) the creditor establishes a colorable claim or cause of action; and (c) the creditor seeks and obtains leave from the bankruptcy court to prosecute the action for and in the name of the trustee, then may an individual creditor or creditors' committee prosecute an action originally vested in the trustee.

*In re Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990) (citations omitted); *see also Watson Lumber Co., Inc. v. Campbell (In re R & L Wood Prods., Inc.)*, No. 96–6509, 1998 WL 449665, at *4–5 (6th Cir. July 21, 1998); *Management Invs. v. United Mine Workers of America*, 610 F.2d 384, 393 (6th Cir.1979) (citing *Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 868 (5th Cir.1971)).[12] The mere fact that the trustee fails to bring an action does not empower a creditor to bring the action; the creditor must seek to obtain the court's permission.[13] *See Management Invs.*, 610 F.2d at 393 (citing *Dallas Cabana, Inc.*, 441 F.2d at 868); *NBD Bank, N.A. v. Fletcher (In re Fletcher)*, 176 B.R. 445, 454 (Bankr.W.D.Mich.1995). Courts have recognized that parties other than creditors, including a debtor, its shareholders, or limited partners, may also seek permission to prosecute an action in the name of a trustee. *See, e.g., Management Invs.*, 610 F.2d at 392–93 (discussing whether the debtor could bring an action for the benefit of creditors); *Dallas Cabana, Inc.*, 441 F.2d at 867–68 (recognizing that a debtor may obtain the court's permission to maintain an action); *Taylor v. Swirnow*, 80 F.R.D. 79, 82 (D.Md.1978) (explaining that a debtor's shareholders may bring a derivative action that became part of the estate with court permission or if the trustee abandons the cause of action); *In re Ira Haupt & Co.*, 274 F.Supp. 1007, 1011 (S.D.N.Y.1967) (discussing how a debtor's limited partners may pursue the debtor's cause of action which had become property of the bankruptcy estate). These precedents may provide some guidance to the parties in this matter.[14]

**12.** It is undisputed that the Debtor's claims against J. Hicks Excavating, Inc. and USF & G arose prior to the filing of the Debtor's bankruptcy and are property of the estate under 11 U.S.C.A. § 541(a) (West 1993).

**13.** In some situations, the trustee may abandon the cause of action, in which case the cause of action revests in the debtor. *See Management Invs.*, 610 F.2d at 392; *Taylor v. Swirnow*, 80 F.R.D. 79, 82 (D.Md.1978). The abandonment enables the debtor, its shareholders or its limited partners to pursue the cause of action. *See, e.g., Folz v. BancOhio Nat'l Bank*, 88 B.R. 149, 150 (S.D.Ohio 1987); *Taylor*, 80 F.R.D. at 82. In that situation, the trustee is not named as a party to the action. *See Taylor*, 80 F.R.D. at 82.

**14.** The court cautions, however, that if Gilreath & Associates or any other attorney or law firm is to be employed to prosecute this action that employment must be by application pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure. This Rule provides, in material part:

(a) **Application for an Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 ... of the Code shall be made only on application of the trustee or committee. The application shall be filed and ... a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

## VII

In summary, the court is not satisfied that the compromise proposed by the Trustee is fair, equitable, or in the best interests of creditors. The evidence before the court demonstrates that the Debtor's claims against J. Hicks Excavating, Inc. and USF & G have a likelihood of success on the merits; that the Debtor's damages could be substantial if it is successful in the prosecution of its claim; and that there is a law firm willing and able to litigate the claims on the Trustee's behalf. Accordingly, the Trustee's Motion will be denied.